[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Ahmad James, appeals from his conviction in the Clark County Common Pleas Court of possession of crack cocaine less than 100 grams and possession of powdered cocaine less than 25 grams. The defendant also appeals from his conviction of a gun specification and carrying a concealed weapon.
The appellant's conviction came after a first trial resulted in a hung jury on all the charges except the charge of having a weapon while under a disability. In the second trial appellant was appointed a different lawyer to represent him, namely Albert Stewart. At the beginning of the trial appellant requested that he be permitted to represent himself, which the court granted.
On September 7, 1996, at approximately 2:20 a.m., Officers Mark Hammond and Shawn Canter of the Springfield Police Department were dispatched to the area of 635 Wiley Avenue in Springfield, Ohio because of a report of suspected drug-related activity in that area. As the officers approached the 600 block of Wiley Avenue, they noticed a car parked in the street. Defendant was the front-seat passenger in the car. Robert Mackey, who was later identified as defendant's brother, was driving the car.
The officers also noticed that someone was leaning inside the car on the passenger's side. The person leaning inside the car noticed the officers and then said something to the individuals inside the car. Thereafter, the car began to leave the area in a hurry with the officers following close behind.
Soon thereafter, the officers initiated a traffic stop because the car in question crossed the center line several times. As the car moved to the right side of the road and began to slow down, all four doors popped open. Defendant tried to get out of the passenger side of the car with a loaded 9 millimeter handgun in his hands. Officer Canter ordered the defendant to drop his weapon when the clip fell out of the defendant's gun he dropped his weapon. The defendant was then taken into custody. The weapon was recovered on the floor board of the passenger side of the car.
Officers Canter and Hammond also found two more guns in the glove box of the car, along with the crack and powdered cocaine and a digital scale. The officers recovered a box of plastic sandwich bags on the front seat of the car between the driver and the defendant. Upon searching the defendant the officers also found $620.00 in cash and a pager. The sandwich tags were similar to the ones in the glove box containing the narcotics. The defendant's brother, Robert Mackey, was the driver of the car. He was found to be in possession of a pager and $1,700 in cash. Two rear seat passengers were also arrested at the scene. Defendant was charged with possession of crack cocaine in an amount exceeding 25 grams but less than 100 grams, possession of powder cocaine in an amount exceeding 5 grams but less than 25 grams, carrying a concealed weapon, and having weapons under disability.
Robert Mackey, the defendant's brother testified at trial that the drugs and firearms found in the glove compartment of the car belonged to him. (Tr. 270). He stated he was currently serving a ten year sentence for the drugs and "Omar had nothing to do with it." (Tr. 271). He also stated he had the key to the glove box and his brother didn't. He stated police broke off the lock to open the glove box. (Police testified the glove box lock was broken).
In rebuttal, Sergeant Brian Radanovich of the Springfield Police Department testified that Mackey told him on a prior occasion that the drugs and weapons found in his car by the police were not his.
In his first assignment, appellant contends the judgment of the trial court was against the manifest weight of the evidence.
He points out that his brother, Robert Mackey admitted the drugs and guns in the glove box were his. He notes that no drugs were found on him and no fingerprints were taken of the drugs, weapons, or sandwich bags. He contends the evidence merely demonstrated he was at the wrong place at the wrong time.
The State argues the evidence was not against the manifest weight of the evidence. The State notes the jury was not required to believe appellant's brother as he could receive no punishment for admitting responsibility for the drugs and firearms. The State also notes he denied the drugs and guns were his on a prior occasion. The State also notes that the defendant was seated directly behind an unlocked glove box with a firearm, pager, and $620 in cash. He also attempted to flee upon the vehicle being stopped.
In State v. Thompson (1997), 78 Ohio St.3d 380, the Ohio Supreme court noted that although a court of appeals may determine that a judgment is sustained by "sufficient" evidence to meet due process standards, the court may nevertheless conclude that the judgment is against the manifest weight of the evidence. Justice Douglas noted at page 387 of the court's opinion:
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. At 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court held that circumstantial evidence and direct evidence inherently possess the same probative value. "Possess or possession" is defined at R.C. 2925.01(K). It means having control over a thing or substance but may not be inferred solely
from mere access to the thing or substance through ownership or occupation of the premises from which the thing or substance is found.
To establish constructive possession the state must prove the defendant was able to exercise dominion or control over the object, even though the object may not be within his immediate physical possession. State v. Boyd (1989), 63 Ohio App.3d 790. Two or more persons may have possession if together they have the ability to control it, exclusive of others. O.J.I. 409.50.
The evidence in this case is not against the manifest weight of the evidence. The jury could rationally conclude beyond a reasonable doubt that the defendant constructively possessed the drugs and firearms. He was seated immediately behind an unlocked glove box containing the cocaine and guns. He and his brother both had pagers and large amounts of cash on them. No explanation was offered for the large amount of cash. There was reason to disbelieve Robert Mackey's testimony. The defendant was also armed with a hand gun. Possession in this case is not inferredsolely from the defendant's mere access to the drugs and guns. The assignment of error is overruled.
In his second assignment, he contends the trial court erred in not declaring a mistrial after an outburst by the appellant during voir dire. During the questioning of potential jurors by the assistant prosecutor, the defendant stated in front of the jury that he didn't want attorney Albert Stewart to be his lawyer. The trial court indicated he would take the matter up at recess. (Tr. 39). A short time later, the following occurred in the courtroom:
DEFENDANT JAMES: I don't have my lawyer.
 MR. COLLINS: Your Honor, may we approach the bench, please?
THE COURT: Mr. Stewart. —
 (WHEREUPON, a conference was held at the bench between Court and Counsel out of the hearing of the jury but made a part of the record as follows.) —
MR. STEWART: He's prejudicing the jury, I'm sure.
 MR. COLLINS: Your Honor, I — this is — I know that Mr. Stewart was not involved in the particular case, but this defendant's half brother played this same trick just several weeks ago while we were trying to impanel a jury in his particular case and succeeded, then, in getting a mistrial in that particular case. And I know that Mr. Stewart has absolutely nothing to do with this. I'm not accusing him of — of anything here; but I believe that this is, again, an attempt by this defendant knowing the success of his brother previously in trying not to proceed with this trial here today. And I — I know that we can tell him to sit down and be quiet; but if past history has any indications, he is going to continue to stand up and to further make it more and more difficult for us to select a jury here today and to proceed with this trial.
 I would ask that if he makes any more outbursts that he be removed from the courtroom and not returned until he either agrees to sit there and remain quiet during this proceeding or we bring him back bound and gagged. There is sufficient case law that indicates that under extraordinary circumstances that is an appropriate remedy here.
 Now, I would certainly rather do something other than that; but if this continues on, I believe that that's the only recourse that we have.
THE COURT: Did you want to comment?
 MR. STEWART: I — this is the first time I've ever been in this type of position, but I think he's already prejudiced the jury. I think he's already succeeded in doing whatever he wants to accomplish. It's going to be very difficult to sit there.
 THE COURT: I don't think that's happened, but you may indicate to him that he would not help his case in — in doing that. I — he might be subject to contempt or knowing that he might be subject to removal. He might be subjected to be gagged. I don't want to proceed that way.
 So that his own best interests would be to properly conduct this trial and not to engage in this. He looks like he's going to have a very good jury here so I — I think he can receive a very fair trial, and he'll have to work in that regard to help his own case.
 Do you want to confer with him at all before we go on?
 MR. STEWART: Please. This will be awful difficult if we continue to —
THE COURT: Do you want a recess or do you want to —
 MR. STEWART: Might have a recess, and I can sit down and talk to him.
 MR. COLLINS: That might be a good idea as well because at some point, I believe that it — the Court needs to give him some instructions as to what his future conduct is expected and what the consequences if he fails on that.
 THE COURT: Okay. I could take ten minutes; and you can confer with him, and I can admonish him. —
(Continuing in the hearing of the Jury.)
—
No request was made by the defendant or his counsel for a mistrial. In the absence of an objection, the trial court's failure to declare a mistrial must have been plain error. In order to constitute plain error, it must be obvious and have a substantial impact on the integrity of and the public confidence in the judicial proceedings. State v. Craft (1977),52 Ohio App.2d 1.
Appellant seeks to take advantage of an error which he himself induced. Courts have consistently refused to permit party to take advantage of such "invited error." Hal ArtzLincoln-Mercury Inc. v. Ford Motor Co., 28 Ohio St.3d 20. Courts have frequently explained their reluctance to consider the disruptive conduct of a defendant to be a proper ground for a mistrial, as being necessitated by the consequences of a contrary holding. To hold that the disruptive conduct of a defendant is a proper ground for a mistrial, it has been said, would provide a criminal defendant with a convenient device for provoking a mistrial whenever he chose to do so. See cases at Annotation, Disruptive Conduct of Accused in presence of jury as ground for mistrial or discharge of jury, 89 ALR 3d 960.
In any event, the jury only heard the defendant request a new lawyer. There is no reason to believe such a request prejudiced the defendant in the eyes of the jury. In fact, the trial court granted his request and permitted the defendant to represent himself during the trial. The trial court did not commit plain error in not declaring a mistrial. The second assignment of error is without merit.
In his third assignment, appellant contends the trial court abused its discretion in not permitting the defendant's counsel, Mr. Stewart, to withdraw from the case.
During voir dire, Mr. Stewart moved to withdraw as the defendant's counsel. The following occurred while the jury was in the jury room:
 MR. STEWART: Yes, Your Honor. At this time after talking with Mr. James at the request of dismissing me as his attorney, I'd like to make a motion to withdraw as his counsel at this time realizing I can't continue to represent him under the facts and circumstances, probably deny him a fair trial.
 And I think he does deserve a fair and impartial trial under the constitution, and at this time I'd like to withdraw as counsel.
 THE COURT: Okay. Well, there's no question he deserves a fair trial. Fair and impartial jury is being selected at this point, and I think it looks like a very good jury composition; and as I noted earlier, this is defendant's third attorney.
 Mr. Van Noy of Risa McCray's office tried the first case. It did result in hung jury as to these charges, and so Mr. Morris took over as counsel and was also fully competent and able to proceed.
 However, this — this appointment by the Court of Mr. Stewart is the third attorney for the defendant, and I think we've had adequate time for preparation. It's been a `96 case, has been pending a long time. Mr. Stewart indicated that he would be prepared, and I think he is prepared at this time to proceed with the trial and has reviewed the transcript of the prior trial being, therefore, familiar and, in fact, has subpoenaed necessary witnesses at the request of the defendant. Those witnesses are present so that the defendant will be able to present a full array of the evidence available in this case.
 So, I'll overrule the motion to withdraw as counsel, Mr. Stewart.
The defendant's dissatisfaction with Mr. Stewart may have resulted from Mr. Stewart's request for a continuance on the day of trial because he had not received discovery material from the prosecuting attorney. (Tr. 9). The trial court overruled the motion for a continuance because the record demonstrated that the defendant's previously appointed counsel had provided Mr. Stewart with a complete transcript of the previous trial in which a hung jury resulted on all charges except the weapons while under disability charge. A motion to withdraw as counsel is committed to the sound discretion of the trial court. State v. Coleman
(1988), 37 Ohio St.3d 286. The trial court noted that counsel was a good competent trial counsel who had discovery provided through the availability of a full trial transcript. We find no abuse of discretion in the trial court's refusal to permit appellant's counsel to withdraw. The third assignment of error is overruled.
In his fourth assignment, appellant contends the trial court abused its discretion in refusing to grant appellant a continuance of his trial. The decision to grant a trial continuance is committed to the sound discretion of the trial court. State v.Unger (1981), 67 Ohio St.2d 65. The record indicates the defendant's retrial was continued on two prior occasions, once because counsel represented to the court that the defendant refused to cooperate with him. The trial court noted that the trial transcript provided Mr. Stewart provided him with "an even better package than the discovery package normally given." (Tr. 13-14). Clearly there was no abuse present in the trial court's refusal to grant the defendant's request for a further continuance. The fourth assignment of error is also overruled.
In his fifth assignment of error appellant contends he was denied the effective assistance of counsel when the trial court refused to continue the trial so his counsel could adequately prepare himself.
Having found that the trial court did not abuse its discretion in refusing to grant the defendant's continuance motion, we must necessarily overrule this assignment as well. The trial court noted that defendant's counsel was highly competent and experienced. He noted that counsel had been provided a complete transcript of the previous trial. The facts of the case were not complicated. The defendant then chose to represent himself and he has failed to portray how the court's ruling denied him the effective assistance of counsel. The fifth assignment is also overruled.
Judgment of the trial court is Affirmed.
FAIN, J., and YOUNG, J., concur.
Copies mailed to:
Stephen C. Collins
S. Todd Brecount
Hon. Gerald F. Lorig