OPINION
{¶ 1} Appellant, Luis D. Ramos, Jr. ("Ramos"), was indicted on July 11, 2006, on one count of burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, an additional count of burglary, in violation of R.C. 2911.12(A)(2), a felony of the second degree, and one count of theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree.
 {¶ 2} Ramos appeared in the Geauga County Court of Common Pleas on September 29, 2006, for the purpose of entering into a written plea agreement pursuant *Page 2 
to Crim.R. 11. Ramos pled guilty to a lesser-included offense of counts one and two, burglary, in violation of R.C. 2911.12(A)(3), felonies of the third degree, and guilty to count three, as charged.
 {¶ 3} On November 13, 2006, Ramos was sentenced to a three-year term of imprisonment on count one, a three-year term on count two, to be served consecutively with each other, and a one-year term on count three, to be served concurrently with counts one and two. Thus, Ramos' aggregate prison term was six years.
 {¶ 4} Ramos' first assignment of error states:
 {¶ 5} "Defendant was denied due process of law when the court did not determine that defendant understood the nature of the charges."
 {¶ 6} In his first assignment of error, Ramos argues the trial court erred by accepting his guilty plea without first outlining the elements of the amended charges or explaining how the amended charges were different from those contained in the indictment. Ramos challenges the trial court's application of the requirements set forth in Crim.R. 11(C)(2)(a).
 {¶ 7} An appellate court utilizes a substantial compliance standard of review when examining a plea of guilty under Crim.R. 11. State v.Griggs, 103 Ohio St.3d 85, 2004-Ohio-4415, at ¶ 12. Substantial compliance has been defined to mean that "under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." State v. Nero (1990),56 Ohio St.3d 106, 108. (Citations omitted.) The Supreme Court of Ohio has ruled that there must be a showing of prejudicial effect before a guilty plea will be vacated. State v. Stewart (1977), *Page 3 51 Ohio St.2d 86, 93, citing Crim.R. 52(A). "The test is whether the plea would have otherwise been made." State v. Nero, 56 Ohio St.3d at 108, citing Stewart, supra, at 93.
 {¶ 8} Specifically, Crim.R. 11(C)(2) requires:
 {¶ 9} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 10} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 11} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 12} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 13} Ramos, in support of his assertion that he did not understand the charges against him, claims that neither the trial court, nor the prosecutor, adequately explained the elements of the amended charges. However, "[t]he courts of this state have generally held that a detailed recitation of the elements of the charge is not required *Page 4 
under Crim. R. 11(C)(2)(a)." State v. Swift (1993), 86 Ohio App.3d 407,412. (Citations omitted.) "The court's determination that the defendant understands the charge can be based on the surrounding circumstances, such as recitations of discussions between the defendant and his attorney." Swift, supra, at 412. The Supreme Court of Ohio has held that in determining whether a defendant understood the nature of the charges, courts are to examine the totality of the circumstances surrounding the plea. State v. Fitzpatrick, 102 Ohio St.3d 321, 2004-Ohio-3167, at ¶ 56, citing Henderson v. Morgan (1976), 426 U.S. 637, 644 and State v.Rainey (1982), 3 Ohio App.3d 441, 442.
 {¶ 14} A review of the record of the plea hearing demonstrates Ramos was aware of the nature of the charges against him. First, Ramos represented to the trial court that Attorney Umholtz, his court-appointed counsel, reviewed the plea agreement with him. Further, the plea colloquy contained statements by Ramos that he had personally reviewed and understood the plea agreement. The trial court, on three separate occasions, asked Ramos if he needed additional time to speak with his counsel about his change of plea. However, Ramos repeatedly answered, "[n]o." In addition, after the trial court stated the potential penalties for the amended charges, Ramos maintained that he understood them. Therefore, the record clearly reflects that based under the totality of the circumstances, the trial court substantially complied with the requirements of Crim.R. 11(C)(2)(a) and that Ramos was aware of the nature of the amended charges. The first assignment of error is without merit.
 {¶ 15} Appellant's second assignment of error states:
 {¶ 16} "Defendant was denied due process of law when he was convicted of the offense where he did not enter a guilty plea." *Page 5 
 {¶ 17} During the plea hearing, the court asked Ramos, "[a]nd then Mr. Ramos, you admit that you have committed those crimes that are negotiated and set forth in that plea agreement?" Ramos responded, "I am responsible for it." Ramos argues that his statement "I am responsible for it" is ambiguous and does not constitute a plea of guilty. We disagree.
 {¶ 18} As previously stated, there must be a showing of prejudicial effect before a guilty plea will be vacated. State v. Stewart,51 Ohio St.2d at 93, citing Crim.R. 52(A).
 {¶ 19} In order to support his argument, Ramos maintains that his statement is akin to a "no contest" plea under North Carolina v.Alford (1970), 400 U.S. 25, 32, where the defendant stated he had not shot the victim when he entered into the plea. In Alford, the United States Supreme Court stated:
 {¶ 20} "Ordinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind. The plea usually subsumes both elements, and justifiably so, even though there is no separate, express admission by the defendant that he committed the particular acts claimed to constitute the crime charged in the indictment." Id. at 32, citingBrady v. United States (1970), 397 U.S. 742, 748 and McCarthy v. UnitedStates (1969), 394 U.S. 459, 466.
 {¶ 21} The record, indeed, reflects Ramos' intent to enter a plea of guilty. First, Ramos stated, "I am responsible for it," when asked about the crimes negotiated in the plea agreement. Moreover, the trial court repeatedly asked Ramos if he understood the ramifications of "your [Ramos'] plea of guilty." The trial court further outlined Ramos' constitutional rights and, after each constitutional right was outlined by the court, Ramos *Page 6 
was asked if he understood that by pleading guilty he was waiving that constitutional right. On all occasions, Ramos replied, "[y]es." The trial court, on numerous occasions, asked Ramos if he had any questions, and he repeatedly stated "[n]o." Further, the trial court recited the potential penalties for each offense. Finally, the trial court stated it would accept the plea of guilty.
 {¶ 22} Assuming, arguendo, that Ramos' plea amounts to a "no contest" plea, the Alford Court stated, "[t]he fact that his plea was denominated a plea of guilty rather than a plea of nolo contendere is of no constitutional significance with respect to the issue now before us, for the Constitution is concerned with the practical consequences, not the formal categorizations, of state law." Id. at 37. (Citations omitted.) Thus, based on the entire record and Ramos' expressed desire to enter into said plea, it is clear the trial court substantially complied with the requirements of Crim.R. 11(B)(1). Therefore, Ramos' second assignment of error is without merit.
 {¶ 23} In his third assignment of error, Ramos states:
 {¶ 24} "Defendant was denied due process of law when the court failed to make an adequate inquiry concerning defendant's dissatisfaction with court-appointed counsel."
 {¶ 25} Appellate courts will review a trial court's decision regarding a change in court-appointed counsel under an abuse of discretion standard. State v. Harrison (Jan. 17, 2001), 9th Dist. No. 20080, 2001 Ohio App. LEXIS 102, at *4, citing State v. Coleman (1988),37 Ohio St.3d 286, 292. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is *Page 7 
unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 26} Ramos, in support of his argument that one's dissatisfaction with his appointed attorney automatically entitles him to a hearing, cites State v. Deal (1969), 17 Ohio St.2d 17. In Deal, the defendant asserted he was denied effective assistance of counsel. Id. at 18. The defendant's court-appointed counsel did not file a notice of alibi defense, nor did defense counsel subpoena the witnesses that the appellant indicated were necessary for his defense. Id. At trial, after the state had presented its three witnesses and rested its case, the defendant, in open court, attempted to discharge his attorney. The record did not illustrate whether the trial court investigated the defendant's objection. Id. at 19. The Supreme Court of Ohio stated that under the above circumstances, "we think it was the trial court's duty to put its own investigation of such an objection into the record, and thus prevent the appellant from being deprived of review on the matter." Id. However, the "limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further." State v. Carter (1998),128 Ohio App.3d 419, 423, citing State v. Deal, 17 Ohio St.2d at 19. For the following reasons, Deal is not applicable in the instant case.
 {¶ 27} In the case sub judice, Ramos wrote letters to the trial court bearing the dates of June 19, 2006 and June 28, 2006, wherein he expressed dissatisfaction with his court-appointed counsel. Ramos indicated that his court-appointed counsel had a conflict of interest and would not vigorously represent him in court proceedings. Further, Ramos alleged that counsel told him one of the alleged victims of the crime of *Page 8 
burglary was a friend and the friend did not want Ramos to do hard time. Additionally, Ramos alleges that he was not satisfied with the legal strategies of defense counsel. Ramos maintains that based on these factors, the trial court should have held a hearing concerning the source of his dissatisfaction.
 {¶ 28} On September 20, 2006, Attorney Umholtz filed a motion for leave to withdraw. Umholtz, for cause, stated:
 {¶ 29} "* * * Mr. Ramos, notwithstanding the Court's explanation at arraignment of defense counsel's function and responsibilities or the advice and explanations by undersigned counsel, continues to file motions, make direct contact with the County Prosecutor's Office and otherwise conduct himself in a manner such as to constitute pro se representation. As a consequence thereof, movant is unable to adequately represent defendant who lacks the prerequisite understanding of criminal law and procedure yet continually undertakes action contrary to the advice and without prior knowledge of counsel."
 {¶ 30} The motion was denied on September 26, 2006.
 {¶ 31} A review of the record reveals that the trial court did not abuse its discretion by not holding a hearing. Ramos did not raise any complaints or objections to the trial court during his plea or sentencing hearing that he was dissatisfied with his trial counsel's effectiveness or adequacy of representation. Further, during both the plea and sentencing hearings, Ramos did not raise any complaints or objections to the trial court based on the alleged conflict of interest. In this respect, there is absolutely no evidence in the record that Ramos was adversely affected by counsel's performance. In fact, judging by the trial transcript, there is every indication that Attorney Umholtz *Page 9 
vigorously pursued Ramos' best interests from his initial appearance as counsel until the sentencing hearing. Therefore, this argument is without merit.
 {¶ 32} Ramos also states that he should have been able to obtain other appointed counsel. In order to support his contention, Ramos cites numerous cases where defendants sought to replace appointed counsel with their own retained counsel. See, e.g., Powell v. Alabama (1932),287 U.S. 45, 53 ("a defendant should be afforded a fair opportunity to secure counsel of his own choice.") However, in this case, Ramos only sought a change in court-appointed counsel. Since Ramos never sought retained counsel, he was never denied retained counsel.
 {¶ 33} The Supreme Court of Ohio has determined that an indigent criminal defendant does not have a constitutional right to choose his court-appointed attorney; rather, he is only entitled to competent legal representation. See, e.g., State v. Murphy (2001), 91 Ohio St.3d 516,523; State v. Cowans (1999), 87 Ohio St.3d 68, 72. "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." State v.Coleman, 37 Ohio St.3d 286, paragraph four of the syllabus.
 {¶ 34} In his brief, Ramos cites to no evidence demonstrating good cause to warrant a substitution of counsel. The record, in fact, reflects many instances where Ramos continued to confer with his appointed counsel throughout the proceedings. As verified by the record, defense counsel advocated for Ramos throughout the course of his representation, and Ramos never raised any issue or complaint with counsel, despite being provided several opportunities to do so by the trial court. *Page 10 
 {¶ 35} Based on the foregoing, we overrule the third assignment of error.
 {¶ 36} Ramos' fourth assignment of error states:
 {¶ 37} "Defendant was denied due process of law when the court arbitrarily imposed consecutive sentences and without determining whether these were allied offenses."
 {¶ 38} In his fourth assignment of error, Ramos alleges the trial court, when imposing its sentence, failed to consider factors set forth in R.C. 2929.14(E)(4), R.C. 2929.11, and R.C. 2929.12.
 {¶ 39} First, Ramos contends the trial court erred by imposing consecutive sentences without making the findings required by R.C.2929.14(E)(4). Ramos also maintains the imposition of consecutive sentences is contrary to the presumption in Ohio law that sentences shall be served concurrently. In order to support this assertion, Ramos quotes the Supreme Court of Ohio in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, at ¶ 66, which states, "Ohio appears to be unique in having a rule that sentences of imprisonment shall be served concurrently."
 {¶ 40} The trial court was not required to engage in judicial factfinding before the court could impose consecutive sentences. In fact, in State v. Foster, the Supreme Court of Ohio severed R.C.2929.14(E)(4), which required judicial factfinding before the court may impose consecutive sentences. Foster, supra, at ¶ 97. Thus, "[a]fter the severance, judicial fact-finding is not required before imposition of consecutive prison terms." Id. at ¶ 99. Furthermore, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum *Page 11 
sentences." Id. at ¶ 100. Therefore, the trial court was not required to impose concurrent sentences, and this portion of Ramos' argument is rejected.
 {¶ 41} Second, Ramos contends the record does not demonstrate the trial court considered R.C. 2929.11 and R.C. 2929.12. Pursuant toState v. Payne, 11th Dist. No. 2006-L-272, 2007-Ohio-6740, at ¶ 19, this court has held post-Foster felony sentencing is generally reviewed for abuse of discretion. "[I]f the sentence falls within the statutory range for the offenses for which the defendant was convicted, then we presume that the trial court considered the sentencing criteria in imposing defendant's sentence even where the record is silent on that point." Id. at ¶ 20. There are certain limited circumstances, however, where the clear and convincing standard of review remains viable. For example, the clear and convincing standard of review will be employed where it is alleged the sentence is contrary to law. Id. at ¶ 19-20. See, also, e.g., State v. Burton, 10th Dist. No. 06AP-690, 2007-Ohio-1941.
 {¶ 42} "[Although a trial court is required to consider the seriousness and recidivism factors, the court does not `"need to make specific findings on the record in order to evince the requisite consideration of all applicable seriousness and recidivism factors."'"State v. Lewis, 11th Dist No. 2006-L-224, 2007-Ohio-3014, at ¶ 24. (Citations omitted.)
 {¶ 43} A review of the record clearly reflects that the sentencing factors under R.C. 2929.11 and R.C. 2929.12 were considered by the trial court prior to sentencing. At the sentencing hearing, the trial court enumerated the factors it found applicable. Moreover, the trial court's judgment entry of sentence states the court considered "the principles of sentencing (R.C. 2929.11) and the sentencing factors (seriousness and *Page 12 
recidivism (R.C. 2929.12))." We further note that, since Ramos' sentence is within the statutory range, the trial court did not abuse its discretion. See R.C. 2929.14(A)(3) and (A)(5).
 {¶ 44} Therefore, this argument is without merit.
 {¶ 45} Ramos further alleges the trial court did not make a determination of whether the two offenses of burglary were allied offenses. Yet, Ramos makes only a broad allegation regarding such offenses and, then, dismisses this portion of his argument. Ohio's multiple-count statute, R.C. 2941.25, provides:
 {¶ 46} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 47} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with aseparate animus as to each, the indictment or information may containcounts for all such offenses, and the defendant may be convicted of allof them." (Emphasis added.)
 {¶ 48} The allied-offense analysis will only be applied when the same conduct, or single act, results in multiple convictions. State v.Cooper, 104 Ohio St.3d 293, 2004-Ohio-6553, at ¶ 17. A review of the record clearly illustrates Ramos was indicted and charged with two counts of burglary — one count in violation of R.C. 2911.12(A)(1) and one count in violation of R.C. 2911.12(A)(2). The two counts of burglary stemmed from two separate offenses. Specifically, Ramos was charged with a burglary that occurred at 16351 GAR Highway on June 3, 2006 and burglary and theft that occurred at 6051 *Page 13 
Madison Road on June 3, 2006. Therefore, the indictment may contain counts for all offenses, and the defendant may be convicted of all of them.
 {¶ 49} Thus, based on the foregoing, Ramos' fourth assignment of error is not well-taken and is denied.
 {¶ 50} Appellant's fifth assignment of error states:
 {¶ 51} "Defendant was denied due process of law when the court imposed consecutive sentences without referencing the statutory criteria and based on judicial factfinding."
 {¶ 52} Ramos argues the "imposition of a consecutive sentence for a felony of the fifth degree without an indication concerning the court's acknowledgement of the statutory criteria resulted in a denial of due process." However, after a review of the record, Ramos' sentence for the felony of the fifth degree was not consecutive, but ran concurrent to counts one and two.
 {¶ 53} Ramos further contends that "there were no allegations contained in the amended charges nor the charge of theft which would subject defendant to more than a minimum sentence without prohibited fact-finding," and any sentence beyond one year would be unconstitutional. This appears to be an argument that the trial court abused the complete discretion granted by Foster. Therefore, it will be reviewed on that basis. Ramos was not sentenced to more than one year for the theft charge, a felony of the fifth degree. Ramos was sentenced to a prison term of one year. This sentence was imposed according to R.C. 2929.14(A)(5), which states, "[f]or a felony of the fifth degree, the prison term shall be six, seven, eight, nine, ten, eleven, or twelve months." Moreover, trial courts now "have full discretion to impose a prison sentence within the *Page 14 
statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentence." Foster, supra, at ¶ 100, except when making a downward departure under R.C. 2929.13(D) or for purposes of R.C.2929.20(H). Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, at paragraph one of the syllabus. No judicial fact-finding was required for the imposition of this sentence. Foster, supra, at ¶ 100. Since the sentence does not violate State v. Foster, this court will not disturb it on appeal. Therefore, Ramos' argument is without merit.
 {¶ 54} Under this assignment of error, Ramos again alleges the trial court did not consider the factors outlined in R.C. 2929.11 and R.C.2929.12, and the trial court should have merged the offenses under R.C.2941.25. As discussed previously, these arguments are without merit.
 {¶ 55} Therefore, the fifth assignment of error is overruled.
 {¶ 56} The judgment of the trial court is affirmed.
 DIANE V. GRENDELL, J., MARY JANE TRAPP, J., concur. *Page 1