[Cite as *State v. Buchanan*, 2013-Ohio-1132.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | |
| LAMONT BUCHANAN | : | Case No. 2012CA00114 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 2012CR0002



JUDGMENT:     Affirmed



DATE OF JUDGMENT:     March 22, 2013



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                    KELLY S. MURRAY
Prosecuting Attorney                    116 Cleveland Avenue, NW
                                                   Suite 810
By: RONALD MARK CALDWELL        Canton, OH  44702
Assistant Prosecuting Attorney
110 Central Plaza South
Suite 510
Canton, OH  44702

*Farmer, J.*

{¶1}   On January 30, 2012, the Stark County Grand Jury indicted appellant, Lamont Buchanan, on one count of aggravated burglary in violation of R.C. 2911.11 and one count of aggravated robbery in violation of R.C. 2911.01, both with firearm specifications, and one count of having weapons while under disability in violation of R.C. 2923.13.   Said charges arose from the robbery of Willie Powell while in a residence with his girlfriend, Stephanie Christmas.

{¶2}   A jury trial commenced on April 26, 2012.  The jury found appellant guilty as charged.  By judgment entry filed May 10, 2012, the trial court sentenced appellant to an aggregate term of twelve years in prison.

{¶3}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶4}   "THE TRIAL COURT ABUSED ITS DISCRETION IN GIVING A FLIGHT INSTRUCTION TO THE JURY WHEN THE EVIDENCE ADDUCED AT TRIAL DID NOT SUBSTANTIATE THE INSTRUCTION."

II

{¶5}   "THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."

III

{¶6}   "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶7}    We will address the assignments of error out of order for ease of clarity.

II

{¶8}    Appellant claims he was denied his right to a fair trial because of prosecutorial misconduct.  We disagree.

{¶9}    The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused.  *State v. Lott,* 51 Ohio St.3d 160 (1990).  In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the contest of the entire trial.  *Darden v. Wainwright,* 477 U.S. 168 (1986).

{¶10} Appellant argues the prosecutor's comments made during closing argument included misstatements of facts about witness Autum Welsh's testimony and improper vouching for the credibility of witness Stephanie Christmas, and implied defense counsel would mislead the jury during his closing argument.  We note no objections were made to the complained of comments; therefore, the matter must be reviewed under a plain error standard.  An error not raised in the trial court must be plain error for an appellate court to reverse.  *State v. Long,* 53 Ohio St.2d 91 (1978); Crim.R. 52(B).  In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error.  *Long.*  Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶11}  The victim, Willie Powell, testified he heard a knock at the door and when he answered, he observed a "little kid," O'Shea Walker, and then he saw appellant "come around the corner with the gun."  T. at 133.

{¶12}  Autum Welsh was a friend of appellant's who was with appellant and his nephew, O'Shea, when they knocked on appellant's door.  T. at 272-274.  Ms. Welsh was seated in her vehicle.  T. at 273, 275.  Ms. Welsh testified O'Shea was at the front door and knocked and appellant "was like right beside him over here."  T. at 274.  Ms. Welsh was indicating the positions of the two men on a photograph.  T. at 273-274.  Ms. Welsh stated the door opened and "a black man let them in."  T. at 274.

{¶13}  Appellant argues the prosecutor misstated Ms. Welsh's testimony by stating it was like Mr. Powell's (T. at 397):

And you heard Autum Welsh's testimony, which she was not obviously Chatty Cathy up there, but she corroborates that; that she's sitting there in the car, and she sees O'Shea at the door and Lamont to the side, like Willie said.  And they go in and no, she didn't see a gun.  It's dark, she's not right there, and it's not to say there wasn't one.  She couldn't see it from her view, and they are not there long at all before she sees a girl run out the back door in shorts and a T-shirt in the middle of the night in the middle of the winter.  This girl runs out the back door and runs into another apartment just minutes later.  Again, she is corroborating what Willie and Stephanie have told you.

{¶14} As already mentioned, Ms. Welsh was indicating appellant's position on a photograph. We are unable to determine where she was pointing out appellant's position. Regardless of this gap, we find the prosecutor's statement was not inconsistent with the testimony or misleading to the jury. We note the trial court properly cautioned the jury on the purpose of closing statement as being assistance, but not evidence. T. at 431-432.

{¶15} Stephanie Christmas was present when appellant and O'Shea entered the residence. T. at 202-203. Although appellant ordered Ms. Christmas to sit down, she ran from the residence. T. at 205. She went to a neighbor's residence and called 911. T. at 210-211. Thereafter, Mr. Powell appeared and the two of them returned to their residence to retrieve her children. T. at 211-212. She stated the children were sleeping. T. at 212.

{¶16} Appellant argues the prosecutor improperly vouched for Ms. Christmas's credibility (T. at 423 and 428, respectively):

The kids were sleeping. The kids - - the kids slept through all of this. I don't know about you. I have a five-year old and an eight-year old, and they can pretty much sleep through anything, and they absolutely could have slept through that.

*** 

But there are some things that you can't fake. You can't fake that fear for your children or the father of your child. If she can fake that, then they ought to move to Hollywood. There is some things you can't fake.

She is scared.  She is scared for her life.  She is scared for Willie's life.  She is scared for the lives of her children.

{¶17}  The comments as to Ms. Christmas's credibility were predicated with asking the jury to review the 911 call.  T. at 428.  We find stating "there is some things you can't fake" does not rise to the level of voucher.  Also, the comment about the children being asleep does not rise to the level of testifying, but is a comment on the evidence.

{¶18}  Lastly, appellant argues the prosecutor implied defense counsel would misstate the facts when he told the jury "[w]hen Mr. O'Byrne gets up to talk to you, I want you to think about was there any testimony of that?  Was there any evidence of that?  Does that make sense?  And think about those things."  T. at 404.

{¶19}  Although the comment was unnecessary, it was not inconsistent with the trial court's instruction concerning closing arguments.

{¶20}  Assignment of Error II is denied.

III

{¶21}  Appellant claims his conviction was against the sufficiency and manifest weight of the evidence.  We disagree.

{¶22}  On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction.  *State v. Jenks,* 61 Ohio St.3d 259 (1991).  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at

paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶23} Appellant argues the evidence is so slight and against the totality of the circumstances to support the convictions for aggravated burglary (R.C. 2911.11) and aggravated robbery (R.C. 2911.01) with firearm specifications (R.C. 2941.145). The elements of the offenses are as follows:

[R.C. 2911.11] (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

[R.C. 2911.01] (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;

(3) Inflict, or attempt to inflict, serious physical harm on another.

{¶24} Appellant's challenge to his convictions is based on the credibility of the witnesses and the believability that he had a weapon.

{¶25} The defense theory as advanced in opening statement was that appellant went to the Powell/Christmas residence to buy marijuana from Mr. Powell. T. at 121-122. An argument ensued and Mr. Powell stabbed appellant. T. at 124-125. Appellant never had a gun and none was found on the premises. T. at 127.

{¶26} Mr. Powell testified differently. O'Shea knocked on the door and Mr. Powell recognized him as a kid from the neighborhood. T. at 132-133. Mr. Powell opened the door and appellant "come around the corner with the gun and put it to my head." T. at 133, 143. Appellant demanded "everything you got" and made O'Shea search Mr. Powell's pockets and remove $6.00 in cash. T. at 134. Mr. Powell begged

for appellant to let Ms. Christmas go because she was pregnant and appellant threatened to "blow her fucking brains out, I'm going to blow your fucking brains out." T. at 135. Ms. Christmas ran and exited the back door. T. at 136, 208. Appellant still had the gun to Mr. Powell's head and threatened to blow his brains out. *Id.* Mr. Powell observed appellant's hand on the trigger "like he ain't going to pull the trigger" so he hit appellant and a fight ensued. T. at 137. The gun fell to the floor and O'Shea picked it up and ran out of the house. *Id.* Mr. Powell kicked appellant, grabbed a kitchen knife, and stabbed appellant. *Id.* Appellant collapsed and Mr. Powell retrieved his $6.00. T. at 138. Mr. Powell believed appellant was dead. *Id.* He then ran out the back door looking for Ms. Christmas and appellant got up and left the house. T. at 138-139. Mr. Powell testified appellant's gun was a "[l]ong nose .22 revolver," and identified appellant as the person who broken in and robbed him. T. at 150, 157.

{¶27} Ms. Christmas testified as to the knock on the door and as soon as Mr. Powell opened the door, appellant "came right behind the boy" and held a gun to Mr. Powell's head. T. at 204. When she attempted to leave, appellant ordered her to sit down and threatened to blow her brains out and Mr. Powell's too, but she managed to exit the back door. T. at 205, 207-208. She heard appellant ordering Mr. Powell to give him everything he had. T. at 207. Ms. Christmas called 911 and the tape was played for the jury. T. at 210. She also identified appellant as the assailant. T. at 217.

{¶28} Ms. Welsh testified she waited in her vehicle while appellant and O'Shea went up to the door of Mr. Powell's residence. T. at 272, 275. She observed O'Shea knock on the door and appellant "was like right beside him." T. at 274. The door opened and "a black man let them in" and then the door was shut. *Id.* She never saw a

gun. *Id.* She observed Ms. Christmas running from the back of the building. T. at 175. O'Shea came to her vehicle and told her to pull up to the dumpster, and then appellant came out, holding himself and asking for help. T. at 275-276. She started driving and police cars cut her off. T. at 277. O'Shea jumped from the vehicle and ran and the police removed Ms. Welsh from her vehicle. T. at 278.

{¶29} Canton City Police Patrolman Jim Nixon received a dispatch about a gun burglary in progress and responded. T. at 292. He observed the vehicle as described to him by dispatch. T. at 293-294. Before he could execute a stop, the vehicle pulled over and a young black male jumped out of the car. T. at 294-295. The male who ran had his hands in front of him in an unusual manner. T. at 296. Appellant was still in the vehicle, bleeding with stab wounds. T. at 298.

{¶30} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶31} If believed, the testimony of Mr. Powell and Ms. Christmas substantiated the charges of aggravated burglary and aggravated robbery. Both observed the gun pointed at Mr. Powell's head and heard the demand for money. Upon review, we find sufficient credible evidence to support the convictions.

{¶32} Assignment of Error III is denied.

I

{¶33} Appellant claims the trial court erred in charging the jury on flight.

{¶34} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens,* 90 Ohio App.3d 338 (1993). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983). Jury instructions must be reviewed as a whole. *State v. Coleman,* 37 Ohio St.3d 286 (1988).

{¶35} The trial court instructed the jury as follows (T. at 434):

In this case there is evidence that the Defendant may have fled from justice. You may not presume the Defendant guilty from this evidence. You may, however, infer a consciousness of guilt regarding the evidence of the Defendant's alleged flight. An accused flight and related conduct may be considered as evidence of consciousness of guilt and thus of guilt itself.

{¶36} Defense counsel objected to the charge, arguing the flight was merely to obtain medical aid, not to escape. T. at 456.

{¶37} From the evidence presented by Ms. Welsh, appellant had her drive him away from the Powell/Christmas residence. He did not ask her to call the police or take him to the hospital. T. at 276. Appellant gave her no direction, but kept saying "he stabbed me." *Id.* She started driving and the police arrived and cut off her progress. T. at 277. She pulled over and O'Shea jumped from the vehicle and fled. T. at 278.

Appellant remained in the vehicle until the police assisted him. T. at 298. When Patrolman Nixon opened the vehicle's door, appellant threw a beer bottle at him. T. at 299.

{¶38} We concur with appellant's position that there was no indicia of flight save for having Ms. Welsh drive him away. However, given the weight of the evidence and our decision in Assignment of Error III, we find the error to be harmless. Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right.

{¶39} There is no indication that the jury charge affected the jury's decision given the testimony of Mr. Powell and Ms. Christmas or that it unduly prejudiced the outcome of the trial.

{¶40} Assignment of Error I is denied.

{¶41} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Hoffman, J. concur.


s/Sheila G. Farmer_____


s/ W. Scott Gwin_____


s/ William B. Hoffman_____


SGF/sg

[Cite as *State v. Buchanan*, 2013-Ohio-1132.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| LAMONT BUCHANAN | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012CA00114 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs to appellant.


s/Sheila G. Farmer_____


s/ W. Scott Gwin____ _____


s/ William B. Hoffman_____