THE STATE OF OHIO, APPELLEE, *v.* COLEMAN, APPELLANT.

[Cite as State *v.* Coleman (1988), 37 Ohio St. 3d 286.]

(No. 87-192—Submitted May 10, 1988—Decided July 6, 1988.)

*Arthur M. Ney, Jr.,* prosecuting attorney, and *William E. Breyer,* for appellee.

*Cissell & Smith, Timothy A. Smith* and *D. Shannon Smith,* for appellant.

WRIGHT, J.   Coleman appeals his aggravated murder convictions and death sentence. We reject his appeal and affirm.

## I

Appellant's first contention is that the guilt-phase jury instructions on complicity are flawed because they do not comport with R.C. 2903.01(D).[1]

---

[1] R.C. 2903.01(D) provides:

"No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. In no case shall a jury in an aggravated murder case be instructed in such a manner that it may believe that a person who commits or attempts to commit any offense listed in division (B) of this section is to be conclusively inferred, because he engaged in a common design with others to commit the offense by force and violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit, the offense. If a jury in an aggravated murder case is instructed that a person who commits or attempts to commit any offense listed in division (B) of this section may be inferred, because he engaged in a common design with others to commit the offense by

According to appellant, where a defendant is charged with aggravated murder in a capital case, jury instructions regarding complicity must specifically state that the inference that defendant intended to kill by aiding a crime is nonconclusive. Because this precise language was not part of the jury instructions, appellant argues the jury's verdict and death penalty recommendation are prejudicially tainted and must be reversed.

The state maintains the instructions are proper. The state argues that jury instructions must be read as a whole. By doing so in this case, the state contends the trial court effectively and clearly cautioned the jury that the inference created was nonconclusive. We agree.

Pursuant to R.C. 2903.01, a person may be found guilty of aggravated murder under two different circumstances. Under the first, aggravated murder is committed when a person purposely, and with prior calculation and design, causes the death of another. Under the second, a person is guilty if he or she purposely causes the death of another while committing, attempting, or fleeing after committing kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, or escape. In the second of these situations, if the jury is instructed that a purpose to kill may be inferred from the fact that defendant engaged in a common design with others to commit the offense by force or violence, the jury also must be instructed that the inference is nonconclusive.

Under R.C. 2923.03, a person may be an accomplice in an offense and prosecuted as the principal offender if, among other things, he aids or abets another in committing the offense while acting with the kind of culpability required for commission of the offense. The culpability required for aggravated murder is, of course, specific intent.

Coleman was alleged to have purposely killed Marlene Walters while committing or attempting aggravated burglary. Alternatively, the state alleged Coleman purposely killed the victim while committing or attempting aggravated robbery. He was alleged to be an accomplice in the commission of aggravated murder.[2]

With regard to the allegation that Coleman committed aggravated murder while committing aggravated burglary, the trial court instructed the jury as follows:

"* * * Aggravated murder is the purposeful killing of another, while committing or attempting to commit the crime of aggravated burglary.

"Before you can find the defendant guilty, you must find beyond a reasonable doubt, that * * * [Marlene

---

force or violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit the offense, the jury also shall be instructed that the inference is nonconclusive, that the inference may be considered in determining intent, that it is to consider all evidence introduced by the prosecution to indicate the person's intent and by the person to indicate his lack of intent in determining whether the person specifically intended to cause the death of the person killed, and that the prosecution must prove the specific intent of the person to have caused the death by proof beyond a reasonable doubt."

[2] The state alleged appellant was guilty of other felonious acts as well.

Walters' death] was caused by the defendant Alton Coleman * * *.

"* * *

"No person may be convicted of aggravated murder, unless he was specifically found to have intended to cause the death of another. * * *"

The trial court gave the same basic instruction as that quoted above regarding the intent necessary for aggravated murder while committing or attempting aggravated robbery.

With regard to complicity, the judge gave the following instruction:

"If you find beyond a reasonable doubt that Alton Coleman purposely aided, helped, assisted, encouraged or directed himself with another, in the commission of aggravated murder, or any of the crimes charged in the indictment, he is to be regarded as if he was the principal offender, and is just as guilty as if he personally performed every act constituting the offense.

"When two or more persons have a *common purpose* to commit a crime, and one does one part and a second performs another, those acting together are equally guilty of the crime.

"However, the *mere association* with one who perpetrates an unlawful act does not render a person a participant in the crime so long as his acts are innocent." (Emphasis added.)

Appellant is, of course, correct that the trial court's instruction does not specifically say "the inference is nonconclusive." We have previously held, however, that jury instructions must be considered as a whole. *State* v. *Price* (1979), 60 Ohio St. 2d 136, 14 O.O. 3d 379, 398 N.E. 2d 772, certiorari denied (1980), 446 U.S. 943. When the jury instructions in the case before us are read as a whole, it is clear the trial court explained that the inference was nonconclusive. This was essentially done by indicating that mere association with one who perpetrates a crime does not render a person a participant and that a finding of specific intent was necessary before the jury could find Coleman guilty of aggravated murder. See, also, *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768.

The trial court's instructions, therefore, were not erroneous. The appellate court's opinion is reversed to the extent it is inconsistent with this finding. Accordingly, we find appellant's first proposition of law is without merit.[3]

## II

Coleman next argues that his convictions were against the manifest weight of the evidence.[4] We disagree.

Appellant contends there was insufficient evidence to establish intent to kill and, hence, the verdicts should be reversed. Principal reliance for this proposition is placed on *Enmund* v. *Florida* (1982), 458 U.S. 782. *Enmund* held that the Eighth Amendment to the United States Constitution bars the death penalty for those who aid

---

[3] The prosecution points out that the jury found Coleman was the principal offender in the aggravated murder of Marlene Walters. It is undisputed that the principal offender charge was proper. Therefore, it is difficult to conceive how Coleman was prejudiced by the complicity instructions. However, since it is our view that the instructions were not improper, we do not reach the question of whether such error would be harmless or prejudicial.

[4] Appellant's proposition reads: "The finding that the defendant killed, attempted to kill, or intended to kill, was based upon *insufficient* evidence." (Emphasis added.) The argument presented in appellant's brief, however, deals with the weight of the evidence and, consequently, this court deals with the argument in the same manner.

and abet felonies resulting in murders, but who themselves do not kill, attempt to kill, or intend that a killing result.[5]

Sufficiency of the evidence is for the jury to determine, and a reviewing court must affirm that determination unless it can say that a reasonable person would have doubted defendant's guilt. *State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 514 N.E. 2d 394; *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184. If there was sufficient evidence that reasonable people could have found defendant intended to kill Marlene Walters, we may not overturn the jury's verdicts.

We find there was ample evidence produced at trial from which the jury could find intent. Evidence was produced that Marlene Walters was initially struck with a soda bottle and that Coleman's finger prints were matched with prints found on the bottle. The large hole in Marlene Walters' head coupled with the presence of her blood in different rooms of the house tends to establish that the assailant intended to kill the victim. Further, the prosecution presented evidence that indicated Coleman made extensive efforts to escape detection and failed to disassociate himself from Brown. Such evidence has been held to indicate purpose to kill. *State* v. *Austin* (1976), 52 Ohio App. 2d 59, 6 O.O. 3d 43, 368 N.E. 2d 59. We reject appellant's proposition of law.

## III

Appellant's next argument is that the court abused its discretion by admitting evidence of other acts. Evidence of other acts by an accused, according to appellant, is admissible only when it "tends to show" one of the matters enumerated in R.C. 2945.59[6] and only when it is relevant to the proof of guilt for the offense charged. Appellant argues that the evidence of Coleman's prior acts did not fall into any of the permissible categories and hence should have been excluded.

Appellee argues the evidence of other acts was remarkably similar to the facts in this case in that each involved:

(1) elderly couples;
(2) use of deception to enter the victim's home;
(3) use of handcuffs;
(4) use of electrical cords to tie the victim's hands and feet;
(5) the incapacitation of the victim's telephone;
(6) the theft of the victim's motor vehicle; and
(7) a conspiracy with Debra Brown.

We find the similarities of the other acts tend to show Coleman's intent or motive to kill and, therefore, the evidence was properly admitted.

In *State* v. *Curry* (1975), 43 Ohio St. 2d 66, 72 O.O. 2d 37, 330 N.E. 2d 720, we held "[o]ne recognized method of establishing that the accused committed defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

---

[5] The state contends *Enmund* has no application here because R.C. 2903.01 requires purpose to kill. Since the statute requires the requisite intent that was missing in *Enmund,* we agree that *Enmund* is inapplicable.

[6] R.C. 2945.59 provides:
"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the

mitted the offense set forth in the indictment is to show that he has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes." *Id.* at 73, 72 O.O. 2d at 41, 330 N.E. 2d at 726.

Our analysis of the statute and case precedent indicates that scheme, plan, or system testimony of other acts is admissible to establish motive or intent where the similarities in the crimes indicate there is a strong likelihood that the offender in the solved crime also committed the unsolved crime. We agree with appellee that the evidence appears to establish Coleman's motive and intent. Therefore, we hold the trial court did not err by admitting the challenged testimony.

### IV

Appellant next argues that the trial court abused its discretion by overruling his request for new counsel. Defendant contends that confrontations with counsel relating to Coleman's right to confer with Debra Brown[7] resulted in a complete breakdown in the attorney-client relationship and ultimately denied him the right to effective assistance of counsel.

The prosecution points out that Coleman was not complaining about his own attorneys, but, apparently, was dissatisfied with Brown's counsel. Furthermore, the state submits that appellant's counsel were extensively prepared for the case, as evidenced by counsel's pretrial motions and trial strategy. Finally, the state argues the

motion, made mid-trial, was tardy and was merely a delaying tactic.

To discharge a court-appointed attorney, the defendant must show " 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.' " *People* v. *Robles* (1970), 2 Cal. 3d 205, 215, 85 Cal. Rptr. 166, 173, 466 P. 2d 710, 717. Appellant has not established that such a breakdown occurred. Indeed, our review of the record indicates Coleman's counsel were thoroughly prepared. Moreover, there is some question whether the "confrontation" ever took place. For these reasons, we do not find any abuse of discretion by the trial court. We hold appellant's argument is without merit.

### V

Appellant makes a series of additional challenges to his aggravated murder convictions and death sentence. Although none of the challenges has merit, we address each in the interest of justice.

### A

Appellant contends the trial court abused its discretion by denying his motion to personally interview Debra Brown. We have previously held the state must allow defense counsel to see an incarcerated witness. *Atkins* v. *State* (1926), 115 Ohio St. 542, 155 N.E. 189. Coleman does not argue that his defense counsel was denied this right. Therefore, *Atkins* is inapplicable. Since there is no precedent or policy consideration that otherwise permits conferences between incarcerated individuals, we hold the trial court

---

[7] Coleman claimed at trial that, initially, counsel allowed visits with Brown, and that during those visits, counsel allowed the defendant and Brown to engage in sex. Coleman further claimed that counsel terminated the "intimate visits" which allegedly caused the breakdown of the attorney-client relationship.

did not abuse its discretion in denying same.

## B

Coleman next asserts the trial court committed prejudicial error during the sentencing hearing by admitting evidence that defendant committed several murders in addition to the one for which he was tried. The record indicates the thrust of appellant's mitigation evidence was to implicate Brown for the crime and attempt to establish appellant's religiousness. The state may, of course, *rebut* appellant's evidence by showing that he and Brown acted together in the past to kill others. R.C. 2945.59. We find no error by the trial court in admitting such evidence.

## C

Appellant next argues that the trial court erred by replacing a juror at trial. The juror had been physically restrained from appearing at trial by her husband. The husband apparently did not approve of the juror's sitting on the case. Appellant complains the court dismissed the juror without inquiring whether she could still perform her duties. R.C. 2945.29 states the court may discharge a juror "[i]f, before the conclusion of the trial, a juror becomes sick, or for other reason is unable to perform his duty." We believe the bizarre circumstance in this case qualifies as a legitimate "other reason" for discharging the juror under the statute. Hence, we find no abuse of discretion. See, also, *State* v. *Shields* (1984), 15 Ohio App. 3d 112, 15 OBR 202, 472 N.E. 2d 1110; *State* v. *Sallee* (1966), 8 Ohio App. 2d 9, 37 O.O. 2d 5, 220 N.E. 2d 370.

## D

Appellant contends the trial court abused its discretion by allowing the prosecution to discuss matters during closing argument that were not listed in the Ohio death penalty statute as "aggravating circumstances." The prosecutor said, among other things, "He hit him so hard he drove a bone into Mr. Walters' skull, into his brain. That's an aggravating circumstance. * * * From the back of the brain, it was so mish-mashed that * * * [the doctor] couldn't actually tell how many wounds hit * * * [Mrs. Walters'] head. Ladies and gentlemen, that's an aggravating circumstance." The court cautioned the jury several times, informed them the court would instruct on the law, and told the jury they should disregard what counsel said. This cautionary instruction, in our view, sufficed to cure the problem. Furthermore, we recognize that counsel has wide latitude during closing argument. *State* v. *Stephens* (1970), 24 Ohio St. 2d 76, 53 O.O. 2d 182, 263 N.E. 2d 773; *State* v. *Martin* (1986), 21 Ohio St. 3d 91, 21 OBR 386, 488 N.E. 2d 166. For these reasons, we do not find the trial court abused its discretion.

## E

Coleman argues in his next claim of error that the trial court erred by considering the nature and circumstances of the offense as aggravating circumstances. This court has consistently held a trial court may rely on the nature and circumstances of the crime as a reason why the aggravating circumstances outweigh the mitigating factors. See *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 512 N.E. 2d 611; *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383; *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598. See, also, R.C. 2929.03(A). We, therefore, find appellant's assertion has no merit.

## F

Coleman next argues that, in a

proportionality review, the appellate court should consider capital cases in which the death penalty was not recommended. This argument was rejected in *Stumpf* and *Steffen, supra.* We concur with those well-reasoned opinions that proportionality review is satisfied by a review of those cases already decided by the reviewing court in which the death penalty has been imposed. Therefore, we reject appellant's argument.

## VI

Coleman raises eleven challenges to the constitutionality of Ohio's death penalty statute. Ten of the eleven are raised merely to preserve argument for appeal and were not briefed. We note that six of appellant's challenges were not preserved below. Those arguments cannot be considered. Although none of the challenges has merit, those properly preserved are discussed below.

## A

Coleman first argues that the death penalty is cruel and unusual punishment and therefore violates the Eighth Amendment to the United States Constitution. We held death by electrocution was not cruel and unusual in *State* v. *Maurer, supra,* and *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264. We decline the invitation to overturn this precedent.

## B

Coleman next argues the death penalty statute permits arbitrary and capricious implementation of the death penalty. We addressed and dismissed this argument in *Jenkins* and *Maurer, supra.* For the reasons outlined in those decisions, we reject appellant's challenge.

## C

Appellant submits the death penalty statute is unconstitutional because it provides harsher treatment for felony-murder than for some premeditated murders. This argument was considered and rejected in *Jenkins* and *Maurer, supra.* We find those cases dispositive of appellant's claim.

## D

In his next challenge, Coleman contends the use of the same jury at both the guilt and penalty phase of a capital case improperly prejudices the accused. We found no such prejudice in *Jenkins* and *Maurer.* For the same reasons, we find that appellant's argument fails.

## E

In his last appealable argument, Coleman submits that the Ohio death penalty is effectively mandatory because no jury could ever find that mitigating factors outweigh the taking of an innocent life. We are confident that a reasonable jury could (and Ohio juries have been able to) recommend life sentences under the right set of facts. This is supported by the fact that Ohio juries have recommended the death penalty on a less-than-regular basis. Finally, we recognize this argument was addressed and rejected in *Jenkins, supra.* For these reasons, we reject Coleman's assertion.

## VII

Our independent weighing of the aggravating circumstances against the mitigating factors leads us to the conclusion that implementation of the death penalty here is proper. Indeed, we find *no* mitigating factors in the facts before us.

Pursuant to our statutory duty, we now address the issue of whether implementation of the death penalty here is proportional to other capital cases decided by this court. The penalty of death has been previously imposed and

upheld as appropriate in cases involving aggravated robbery and aggravated burglary. See, *e.g., State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922. We, therefore, hold that a sentence of death herein is neither excessive nor disproportionate to the penalty imposed in similar cases. Therefore, we affirm appellant's convictions and death sentence.

*Judgment affirmed*
*as modified.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.