[Cite as *State v. Young*, 2017-Ohio-2749.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 103551

## STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

## LEONARD J. YOUNG

### DEFENDANT-APPELLANT

---

## JUDGMENT:
### APPLICATION DENIED

---

Cuyahoga County Court of Common Pleas
Case No. CR-15-595168-A
Application for Reopening
Motion No. 503850

**RELEASE DATE:** May 10, 2017

**FOR APPELLANT**

Leonard J. Young, pro se
Inmate No. A673-457
Mansfield Correctional Institution
1150 North Main Street
Mansfield, Ohio   44901


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:   Andrew F. Rogalski
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

KATHLEEN ANN KEOUGH, A.J.:

{¶1} Leonard J. Young has filed a timely application for reopening pursuant to App.R. 26(B). Young is attempting to reopen the appellate judgment, rendered in *State v. Young*, 8th Dist. Cuyahoga No. 103551, 2016-Ohio-7477, that affirmed his conviction for one count of rape and one count of kidnapping. We decline to reopen Young's original appeal.

{¶2} In order to establish a claim of ineffective assistance of appellate counsel, Young is required to establish that the performance of his appellate counsel was deficient and the deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990).

{¶3} In *Strickland*, the United States Supreme Court held that a court's scrutiny of an attorney's work must be highly deferential. The court further stated that it is all too tempting for a defendant to second-guess his attorney after conviction and that it would be too easy for a court to conclude that a specific act or omission was deficient, especially when examining the matter in hindsight. Thus, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy. *Strickland*.

**{¶4}** Herein, Young has raised two proposed assignments of error in support of his application for reopening. Young's initial proposed assignment of error is that:

> Trial court erred when it denied appellant[']s request to terminate counsel violating the appellant's rights to adequate counsel under the sixth amendment of the United States Constitution.

**{¶5}** Young, through his first proposed assignment of error, argues that the trial court erred by failing to terminate appointed counsel and appoint new counsel. When an indigent defendant makes a request for the termination of his appointed counsel and the appointment of new counsel, based upon effectiveness and adequacy of appointed counsel, the trial court is required to inquire into the defendant's allegation and make the inquiry part of the record. *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969); *State v. King*, 104 Ohio App.3d 434, 662 N.E.2d 389 (4th Dist. 1995).

**{¶6}** Herein, Young requested that the trial court discharge his appointed counsel and appoint new counsel, based upon the allegation that appointed counsel was inadequate, ineffective, and failed to honor Young's requests. The trial court inquired into Young's complaint on the record. *See* tr. 75. At the conclusion of the trial court's inquiry, Young clearly abandoned his request for discharge of appointed counsel. It must also be noted that even if Young had not abandoned his request for discharge of appointed counsel, we find that Young failed to demonstrate "a breakdown in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to

effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 466 P.2d 710 (1970). It must also be noted that a defendant's right to counsel does not extend to counsel of the defendant's choice. *Thurston v. Maxwell*, 3 Ohio St.2d 92, 209 N.E.2d 204 (1965). Young has failed to establish that he was prejudiced by the failure of appellate counsel to argue the issue of trial court erred by not discharging appointed counsel.

{¶7} Young's second proposed assignment of error in support of his application for reopening is that:

> Prosecutorial misconduct violating the appellant's rights under the fourteenth and fifth amendment of the United States Constitution.

{¶8} Young, through his second proposed assignment of error, argues that appellate counsel was ineffective on appeal by failing to argue the issue of prosecutorial misconduct. Specially, Young argues that the prosecution was aware that the victim's testimony was false. In essence, Young is attempting to attack the credibility of the victim of the rape.

{¶9} Young, however, has failed to provide this court with any evidence that the victim's statements were false or that the prosecutor knew that the victim's statements were false. It must also be noted that this court, through the second assignment of error as raised on direct appeal, addressed the issues of the victim's credibility and the victim's conflicting testimony.

In his second assignment of error, Young contends that his convictions were against the manifest weight of the evidence because the trial court did not properly evaluate C.C.'s credibility and did not effectively resolve conflicting testimony.

_

* * *

Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able to view the witnesses, and use its observations of the witnesses' demeanor and gestures in weighing the credibility of the proffered testimony. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The trier of fact may take note of any inconsistencies and resolve them accordingly, choosing to believe all, none, or some of a witness's testimony. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21.

Young contends that C.C.'s testimony was not credible because she testified that the rape occurred around 5:14 p.m., she left Young's apartment after texting her mother at 5:24 p.m. that she had just been raped, and she then went to the street corner where she called 911 and waited for the police. Young notes that the 911 call was not made until 6:21 p.m., however. He further points out that Rosa, the sexual assault nurse examiner, testified that C.C. told her that she had bathed post-assault and before her examination_at Fairview Hospital, and that C.C. responded affirmatively when she was asked whether she "had food, drink, or chewed gum" since the assault. Young asserts that C.C.'s version of events failed to account for the hour after the assault before the 911 call was made and for these post-assault activities, which should have caused the trial judge to doubt the veracity of her testimony._

* * *

Young argues further that several other inconsistencies in C.C.'s testimony should have caused the trial judge to doubt her veracity. Specifically, C.C. testified that the girlfriend whose house she intended to go to did not answer the door when she arrived there at 4:00 or 5:00 a.m. after leaving the hospital the morning after the assault, so she went somewhere else. C.C. could not recall where she went, however. Young questions how C.C.

could remember the details of the alleged assault with such specificity but could not remember where she went right after leaving the hospital. Similarly, Young notes that C.C. testified that she returned to his apartment at one point to collect the rest of her belongings, but could not remember when she did so. Finally, he points out that when describing the alleged assault to Detective Evans, C.C. said that Young "was in [her] too long for [her] liking," a description inconsistent with the violent, forcible incident she described on direct examination._

In finding Young guilty of rape and kidnapping, the judge explained that there was compelling_evidence of a struggle involving C.C. The judge noted that her observation of Young indicated that he was "certainly capable" of engaging in a physical struggle, and when she specifically asked him during trial about his disabilities, he claimed only mental disabilities._

The judge also noted that C.C.'s descriptions to the police, the sexual assault nurse examiner, and at trial regarding what had happened to her were very consistent. The judge found that there was not an unreasonable lapse of time from when the rape occurred until it was reported. And the judge noted that Young apologized to C.C. in his 6:18 p.m. text to her, presumably for the sexual assault. The judge found that Young's statement in the text that "you haven't shared a plan" could reasonably mean that Young did not know that C.C. was planning to move out with a friend, and that he raped her because he wanted her out of his apartment. The judge noted that after the alleged rape, Young admitted to the police that he had been actively trying to constructively evict C.C. and had escalated his campaign to get her out. The judge found that this evidence, combined with C.C.'s text messages to her mother that Young had just_raped her, C.C.'s text response to Young accusing him of sexually assaulting her, and Young's failure to deny C.C.'s accusation, demonstrated that Young was guilty beyond a reasonable doubt of rape and kidnapping._

Upon review, we cannot conclude that Young's conviction was against the manifest weight of the evidence. As the trial court found, C.C.'s statements on the 911 call, to the police and the sexual assault nurse examiner, and at trial, were very consistent. The trial judge heard Rosa testify that C.C. told her that she had bathed after the rape; the judge undoubtedly weighed this testimony when considering whether C.C.'s version of the events was true._

We agree that C.C.'s omission from her testimony that she bathed after the rape is curious, but we do not conclude that as a result the trial court should have necessarily concluded that all of her testimony was not credible. The text messages between her and her mother support her testimony that the rape occurred at approximately 5:14 p.m., and Young's subsequent text to C.C. at 6:18 p.m. stating "I'm sorry it had to end this way" can certainly be construed as an apology for raping her.

* * *

Moreover, if Young's version of the events is assumed to be true — that there was no rape and C.C. left his apartment around 4 p.m. that day because he videotaped her — C.C.'s testimony about the rape must necessarily be false, and the texts sent to her mother necessarily fabricated in order to frame Young. In light of C.C.'s adamant denial that she lied about the rape, however, we do not find that the judge lost her way in finding C.C.'s testimony about the rape more credible than Young's testimony denying the rape.

C.C.'s statement to Detective Evans that Young "was in [her] too long for [her] liking" is not inconsistent_with her description of the rape. C.C. testified that her statement meant that Young "shouldn't have been in there at all" and "he wouldn't get off me. He wouldn't get out of me. He shouldn't have never been there."_

* * *

Finally, although Young asserts that there was no DNA evidence that tied him to the rape, the DNA analyst testified that there was foreign DNA found on C.C.'s inner right thigh, and Young could neither be included nor excluded from being a contributor of that foreign DNA. In light of C.C.'s testimony about the rape, the trier of fact could reasonably infer that Young's DNA was the foreign DNA in the mix. Moreover, the hand-print bruise on C.C.'s inner thigh corroborated her testimony that Young used one hand to hold her legs open during the rape. Although Rosa conceded that the bruises could have been there for several days, as factfinder, the judge was in the position to observe C.C.'s demeanor and evaluate the credibility of her testimony.

Therefore, weighing the evidence and all reasonable inferences, considering the credibility of C.C. and Young, and resolving the conflicts in the evidence, we do not find that the judge clearly lost her way in convicting

Young of rape and kidnapping. Accordingly, the second assignment of error is overruled.

*State v.Young, supra* at ¶ 33-47.

**{¶10}** Upon appeal, this court has already reviewed the issues of the victim's credibility and conflicting testimony. Thus, res judicata prevents this court from once again determining whether the trial court properly evaluated the credibility of the victim and the effect of conflicting testimony. *State v. Tate*, 8th Dist. Cuyahoga No. 81682, 2004-Ohio-973. Young, through his second proposed assignment of error, has failed to demonstrate that the performance of his appellate counsel was deficient and that he was prejudiced.

**{¶11}** Accordingly, the application for reopening is denied.

_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

LARRY A. JONES, SR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR