[Cite as *State v. Beatty*, 2021-Ohio-355.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. CT2020-0015 |
| JOHN BEATTY | |
| Defendant-Appellant | O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Muskingum County<br>Court of Common Pleas, Case Nos.<br>CR2019-0035 & CR2019-0400 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | February 8, 2021 |

APPEARANCES:

For Plaintiff-Appellee

D. MICHAEL HADDOX
Prosecuting Attorney
Muskingum County, Ohio

TAYLOR P. BENNINGTON
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth Street
P.O. Box 189
Zanesville, Ohio  43702-0189

For Defendant-Appellant

JAMES ANZELMO
446 Howland Drive
Gahanna, Ohio  43230

*Hoffman, J.*

**{¶1}** Appellant John Beatty appeals the judgment entered by the Muskingum County Common Pleas Court in Case No. CR2019-0035 convicting him of aggravated burglary(R.C. 29ll.ll(A)(I)), assault on a peace officer (R.C. 2903.13(A)), vandalism (R.C. 2909.05(B)(2)) and possession of criminal tools (R.C. 2923.24(A)), and the judgment entered by the Muskingum County Common Pleas Court in Case No. CR2019-0400 convicting him of escape (R.C. 2921.34(A)(1)), and sentencing him to an aggregate prison term of eleven to twelve and one-half years.  Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Around 3:00 a.m. on January 16, 2019, police received a call from the Walmart store in Zanesville, Ohio, indicating a man in the store, later identified as Appellant, was acting in a suspicious manner.  Appellant randomly filled a cart with high price items, which store staff found unusual for that hour of the morning.  Further, the store recently had experienced thefts by a man matching Appellant's description.

**{¶3}** Deputy Wade Kanavel responded to the call.  Dep. Kanavel went to the electronics department to observe Appellant, then made contact with Appellant.  The deputy explained Walmart was concerned with the amount of merchandise Appellant had in his cart, and he asked how Appellant intended to pay for the merchandise.  Appellant indicated he intended to pay with cash.  However, Appellant admitted upon further questioning he did not have cash on his person.  Appellant then told the deputy he would pay with a credit card.  However, Appellant also did not have a credit card with him.  Appellant told the deputy he would call his mother to come pay for the items.

**{¶4}** Dep. Kanavel asked Appellant for information about his identity.  Appellant provided two different names, and a date of birth.  The deputy escorted Appellant to the

front of the store, where Appellant was instructed to sit on a bench, while dispatch checked the information.  Deputy Chevy Hood had arrived, and waited by the front entrance.

{¶5}    Unable to confirm Appellant's identity, police indicated Appellant would be detained until they could ascertain his identity and check for outstanding warrants. Appellant refused to stand up from the bench upon request.  As the deputies attempted to get Appellant off the bench, Appellant lowered his shoulder into Dep. Hood.  Both deputies fell to the ground, dislocating and fracturing Dep. Hood's ankle.

{¶6}    Appellant ran to the parking lot.  Dep. Kanavel's attempt to stop Appellant with a taser gun was unsuccessful.  Appellant got into a Toyota Tacoma truck and left the parking lot.  Other officers responded and began pursuit.

{¶7}    Appellant was eventually pursued to Crock Road, where he turned into a driveway.  The driveway was icy, allowing Appellant to circle around and return to the roadway.  Appellant then backed into the police cruiser behind him, pushing it into a second cruiser which had been following.  Appellant continued to refuse to stop his truck.

{¶8}    Eventually, a third cruiser arrived on the scene and pinned Appellant's truck between the cruisers.  Appellant was apprehended.

{¶9}    Appellant was indicted by the Muskingum County Grand Jury in case number CR2019-0035 with aggravated burglary, aggravated robbery, felonious assault on a peace officer, failure to comply, two counts of vandalism, and possession of criminal tools, with a specification for forfeiture of the Toyota Tacoma truck.

{¶10}  Appellant was initially found incompetent to stand trial.  The court ordered Appellant to be placed in a behavioral health facility in Athens, Ohio, for evaluation.  While

there, he grabbed an employee of the facility, took the employee's keys, and escaped the facility. Appellant was later found in a house in Zanesville. Appellant barricaded himself in the residence and refused to come out until officers were able to enter the residence and apprehend Appellant. Appellant was indicted by the Muskingum County Grand Jury in case number CR2019-0400 with one count of escape.

**{¶11}** Appellant was restored to competency and the cases proceeded to a negotiated plea. Appellant entered pleas of guilty in case number CR2019-0035 to aggravated burglary, assault on a peace officer (amended from felonious assault on a peace officer), one count of vandalism, and possession of criminal tools, including the forfeiture specification. All other charges were dismissed. The trial court sentenced him to eight years incarceration for aggravated burglary, eighteen months incarceration for assault on a peace officer, twelve months incarceration for vandalism, and twelve months incarceration for possession of criminal tools, to be served concurrently to each other, but consecutively to the sentence imposed in CR2019-0400. Appellant also entered a plea of guilty to escape in case number CR2019-0400. The trial court sentenced him pursuant to the Reagan Tokes Act to a term of incarceration of 3-4½ years, to be served consecutively to the sentence imposed in CR2019-0035, for an aggregate term of incarceration of 11-12½ years.

**{¶12}** It is from the February 19, 2020 judgments of the Muskingum County Common Pleas Court Appellant prosecutes his appeal, assigning as error:

I. JOHN BEATTY DID NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY PLEAD GUILTY IN CR2019-0035 OR CR2019-0400, IN

VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION.

II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING BEATTY'S TWO MOTIONS TO DISMISS HIS TRIAL COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

III. THE TRIAL COURT ERRED IN FINDING THAT BEATTY WAS COMPETENT TO PROCEED WITH THE LEGAL MATTERS AGAINST HIM, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

IV. AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR FIRST AND SECOND DEGREE QUALIFYING FELONIES VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND OHIO.

V. THE TRIAL COURT PLAINLY ERRED BY FAILING TO MERGE BEATTY'S OFFENSE OF POSSESSION OF CRIMINAL TOOLS AND VANDALISM.

VI. JOHN BEATTY RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE

UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE

OHIO CONSTITUTION.

I.

**{¶13}** In his first assignment of error, Appellant argues his guilty pleas were not knowingly, willingly and intelligently made because the trial court failed to inform him his plea was a complete admission of guilt.

**{¶14}** Crim. R. 11(C) provides in pertinent part:


(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.


**{¶15}** Crim.R. 11(B), captioned "Effect of guilty or no contest pleas," states a plea of guilty "is a complete admission of the defendant's guilt."

**{¶16}** The information a guilty plea is a complete admission of guilt, along with the other information required by Crim.R. 11, ensures defendants enter pleas with knowledge of rights they would forgo and creates a record by which appellate courts can determine whether pleas are entered voluntarily. *See State v. Nero* (1990), 56 Ohio St.3d 106, 107, 564 N.E.2d 474; (1990).  The right to be informed a guilty plea is a complete admission

of guilt is not constitutional and therefore is subject to review under a standard of substantial compliance. *Id.*

**{¶17}** Although the failure to adequately inform a defendant of his constitutional rights would invalidate a guilty plea under a presumption it was entered involuntarily and unknowingly, failure to comply with respect to rights which are not constitutional in nature will not invalidate a plea unless the defendant thereby suffered prejudice. *Id.* at 108, 564 N.E.2d 474. The test for prejudice is "whether the plea would have otherwise been made." *Id.* A defendant who has entered a guilty plea without asserting actual innocence is presumed to understand he has completely admitted guilt. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, syllabus. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11(C)(2) is presumed not to be prejudicial. *Id.*

**{¶18}** In the instant case, the trial court failed to inform Appellant his guilty plea would constitute a complete admission of guilt. However, while at earlier hearings in the case Appellant asserted there was no basis for the charges of aggravated burglary and aggravated robbery, at the plea hearing Appellant failed to assert actual innocence of any of the charges to which he was entering a plea. In fact, Appellant's statement on the record immediately after entering his pleas acknowledges his guilt:

THE DEFENDANT: Yes, sir, Your Honor. I wrote this last night. Your Honor, I would like to start by saying that I am truly sorry to everyone my actions affected. I don't want to make excuses, but during the time that these things took place, I was suffering a lot of loss. I lost my grandma, my

best friend, my dog, and recently my wife. That's not an excuse, but at the time I wasn't thinking right. I personally wanted to die and be with them. Everything was just so unreal. Nobody can prepare for a loss like that.

I am so sorry to everyone I affected while being so self-destructive. I know I handled things wrong, but I don't feel that this sentence reflects my crime. I am a man of my Lord and Savior Jesus Christ, and whatever I receive today, I will take in faith. I just want the Court to understand my actions that day were not made in a clear mind. Thanks for your time, Your Honor.

**{¶19}** Tr. (2/18/20) 24-25.

**{¶20}** We find the Crim. R. 11 error is not prejudicial pursuant to *Griggs, supra,* as Appellant did not assert actual innocence at his change of plea hearing.

**{¶21}** Appellant also argues he was forced to go forward with counsel who wanted to pursue a plea bargain, and he did not have adequate time to consider his options before being pressured by counsel to proceed with a guilty plea. He relies on representations made in his docketing statement and his own statements made in the hearing on his motion to dismiss counsel in support of his claims. The docketing statement is not evidence, and the record does not support Appellant's claim he did not have adequate time to consider his options. Further, the mere fact counsel sought to pursue a plea bargain does not demonstrate counsel pressured Appellant into entering a plea, rendering Appellant's plea involuntary. We find the record does not support Appellant's claim his

plea was not voluntarily and willingly made based on pressure from counsel and inadequate time to consider his options.

**{¶22}** The first assignment of error is overruled.

II.

**{¶23}** In his second assignment of error, Appellant argues the trial court erred in overruling his two motions to dismiss his court-appointed attorney.

**{¶24}** "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus. "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298, *quoting United States v. Iles*, 906 F.2d 1122, 1130 (C.A.6, 1990).

**{¶25}** The trial court's decision is reviewed under an abuse of discretion standard. *Id.* In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶26}** On October 31, 2019, Appellant filed his first motion to remove his appointed attorney. In his memorandum in support, he argued she discussed the possibility of a plea deal with him despite the fact he believed there was no evidence to support the charges of aggravated burglary and aggravated robbery and he was not interested in a plea deal, and she refused his demands to file various pre-trial motions, including a motion to suppress, a motion to dismiss, and a motion to continue the case.

**{¶27}**  The trial court held a hearing on the motion on November 13, 2019.  At the hearing, Appellant opined his attorney would not try to get the charges of aggravated burglary and aggravated robbery dismissed despite the fact the State had no evidence on those charges, and she would not file a motion to continue the case.  Counsel noted she had filed a motion to continue the case, and further tried to do what her client asked to the best of her abilities within the bounds of the ethical rules and what she believed to be adequate and competent legal representation.

**{¶28}** The record demonstrates counsel communicated with Appellant.  Her statements to the court reflect she understood what Appellant wanted; however, she could only represent him within the bounds of the ethical rules and what she determined to be competent legal representation under the facts of the instant case.  There was not a breakdown in communication between Appellant and his attorney, but rather a disagreement as to the best line of defense.  *See State v. Murphy*, 91 Ohio St.3d 516, 524, 2001-Ohio-112, 747 N.E.2d 765, 782.  We find the trial court did not abuse its discretion in overruling Appellant's first motion to dismiss his attorney.

**{¶29}**  Appellant filed a second motion to dismiss his attorney on February 7, 2020. The trial court overruled the motion on February 18, 2020, after considering statements made by Appellant and counsel at a hearing held February 14, 2020.  A transcript of this hearing has not been provided to this Court.  Appellant's praecipe for the transcript of the proceedings requested only the transcript of the February 18, 2020 hearing on his change of plea and sentencing.  Appellant later filed a motion to supplement the record with the transcripts of the hearings held on November 13, 2019 (first motion to dismiss counsel) and June 14, 2019 (competency).  This Court granted the motion to supplement; however,

no request was made to supplement the record with the February 14, 2020 hearing on Appellant's second motion to dismiss his attorney. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385 (1980).

{¶30} The second assignment of error is overruled.

III.

{¶31} In his third assignment of error, Appellant argues the trial court erred in finding him competent to stand trial.

{¶32} The standard for competence is set forth in R.C. 2945.37(G):

A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

{¶33} Appellant was initially found incompetent to stand trial. The court ordered Appellant to be placed in a behavioral health facility in Athens, Ohio, for evaluation. On June 12, 2019, a report of Dr. John Tilley was filed in the trial court, finding Appellant was

now competent to stand trial. At a hearing held June 14, 2019, Appellant stipulated to these findings in the report concerning his competency to stand trial. Tr. (6/14/19) 4.

**{¶34}** Appellant now argues the conclusion he was competent was undermined by the fact "the evaluator made a contradictory conclusion that Beatty had an 'underlying personality pathology' that interfered with his ability to effectively engage in the legal proceedings." Brief of Appellant, p. 10. The trial court's judgment includes the full quote concerning this personality pathology, taken from the report of Dr. Tilley:

> Dr. Tilley went on to state, "Secondary to what appears to be underlying personality pathology, there is a substantial risk that Mr. Beatty will intentionally act inappropriately or present as uncooperative with his attorney or the legal proceedings in some fashion. However, any such behavior will not, in all probability, be attributable to mental illness. Presently, he has the capacity to understand the nature and objective of the proceedings against him, he has the capacity to assist in his defense, and he has the capacity to conform his behaviors to the demands of the legal system, if he chooses to do."

**{¶35}** Judgment Entry, June 17, 2019.

**{¶36}** The findings of Dr. Tilley concerning Appellant's "underlying personality pathology" are not in fact contradictory to his conclusion Appellant was competent to stand trial. Rather, Dr. Tilley notified the trial court any appearance of incompetence on Appellant's part was most likely intentional misbehavior, and not a result of Appellant's

present mental condition as required by R.C. 2945.37(G).  We find the trial court did not err in finding Appellant competent to stand trial.

**{¶37}** The third assignment of error is overruled.

IV.

**{¶38}** Appellant was sentenced for his conviction of escape pursuant to the Reagan Tokes Act.  He argues the presumptive release provisions of the Act are unconstitutional.

**{¶39}** For the reasons stated in this Court's opinion in *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, *appeal allowed*, 2020-Ohio-6835, we find Appellant's constitutional challenge is not yet ripe for review.

**{¶40}** The fourth assignment of error is overruled.

V.

**{¶41}** In his fifth assignment of error, Appellant argues the trial court committed plain error in failing to merge his convictions of possession of criminal tools and vandalism as allied offenses of similar import.

**{¶42}** An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Accordingly, an accused has the burden to demonstrate a reasonable probability the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus.  *Id.* Absent such showing, the accused cannot

demonstrate the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error. *Id.*

**{¶43}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.2d 892, the Ohio Supreme Court revised its allied-offense jurisprudence. When considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A), both the trial court and the reviewing court on appeal must first take into account the conduct of the defendant. *Id.* In other words, how were the offenses committed? *Id.* If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation. *Id.*

**{¶44}** In the instant case, Appellant was indicted on one count of possession of criminal tools, a 1997 Toyota Tacoma, with purpose to use the same in commission of a felony.  The indictment does not specify the underlying felony offense, and a bill of particulars was not filed in the instant case.

**{¶45}** Appellant argues the possession of criminal tools offense pertains to his use of his truck to commit felony vandalism.  The State argues in response Appellant committed the offense of possession of criminal tools as soon as he fled Walmart in the Toyota Tacoma.  We agree.

**{¶46}** The crime of possession of criminal tools is defined by R.C. 2923.24(A) as, "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."  The crime as defined includes no

requirement the "criminal purpose" be a crime for which the defendant was indicted, nor does it require the defendant possess the instrument for a singular criminal purpose; it merely requires the purpose to use the instrument be criminal in nature.

{¶47} The crime of escape is defined by R.C. 2921.34(A):

(A)(1) No person, knowing the person is under detention, other than supervised release detention, or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.

{¶48} The recitation of the facts set forth following Appellant's plea states Appellant was detained at the front of the store by Dep. Kanavel, while Dep. Hood waited at the front door to the Walmart. Officer indicated Appellant was going to continue to be detained while they attempted to ascertain his identity in order to check for outstanding warrants. While attempting to remove Appellant from the bench in the front of the store, a scuffle ensued, during which Appellant knocked Dep. Hood to the ground, fracturing Hood's ankle. At this point, Appellant escaped the store. Dep. Kanavel attempted to tase Appellant to stop him, but was unsuccessful, and Appellant fled the parking lot in the Toyota Tacoma truck.

{¶49} Although Appellant was not separately charged with the felony offense of escape relating to the events occurring at Walmart, the record demonstrates the court

could have concluded Appellant possessed the truck with intent to use it purposefully for the criminal offense of escape from detention by police at Walmart.  Therefore, we find Appellant has not demonstrated he could not be separately convicted of possession of criminal tools, where the factual recitation demonstrated he used the truck with purpose to commit the felony offense of escape.

**{¶50}** We find Appellant has not demonstrated the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus, and therefore we find the trial court did not commit plain error in failing to inquire whether the offenses should merge.

**{¶51}**  The fifth assignment of error is overruled.

VI.

**{¶52}**  In his sixth assignment of error, Appellant argues counsel was ineffective for failing to raise the issue of the constitutionality of the Reagan Tokes Act, and for failing to argue the offenses of vandalism and possession of criminal tools were allied offenses of similar import and should therefore have merged.

**{¶53}**  A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different.   *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).  In other words, Appellant must show counsel's conduct so undermined the

proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.   *Id*.

**{¶54}** For the reasons stated in our discussion of Appellant's fourth assignment of error, the issue of the constitutionality of the Reagan Tokes Act is not yet ripe for review, and therefore Appellant has not shown a reasonable probability of a change in the outcome had counsel raised the issue in the trial court.

**{¶55}** For the reasons stated in our discussion  of Appellant's fifth assignment of error, Appellant has not demonstrated a reasonable probability of a change in the outcome had counsel argued possession of criminal tools and vandalism were allied offenses of similar import and should therefore have merged.

**{¶56}** The sixth assignment of error is overruled.

**{¶57}** The judgment of the Muskingum County Common Pleas Court is affirmed.


By: Hoffman, J.

Wise, Earle, J.  concurs

Gwin, P.J., concurs in part, dissents in part

*Gwin, P.J., concurs in part; dissents in part*

{¶58}  I respectfully concur in the majority's disposition of Beatty's First, Second Third, and Fifth Assignments of Error.  However, I do so for the following reasons.

{¶59}  In *State v. Barksdale*, 2 Ohio St.3d 126, 443 N.E.2d 501(1983),  Barksdale was indicted on one count of breaking and entering in violation of R.C. 2911.13(B), the alleged trespass occurring on a car lot.  During Barksdale's jury trial it was established without dispute that the subject car lot was open to the public at the time of Barksdale's entry thereon and that Barksdale had not been given permission either to enter any of the vehicles present on the lot or to remove any items therefrom. Barksdale was convicted. The court of appeals reversed Barksdale's conviction, ruling that the state had failed to prove an essential element of the crime of breaking and entering, i.e., trespass. The Ohio Supreme Court accepted the state's appeal to address the question of whether one who enters premises open to the public with an intent to commit thereon a felonious act, forfeits his right of entry and becomes a trespasser, subject to prosecution under R.C. 2911.13 for breaking and entering. The Ohio Supreme Court emphatically rejected this entreaty,

> This court is convinced that were we to find that appellee, by virtue of his felonious intent, lost his right to enter the lot, a dramatic and completely unfounded change would be wrought in our system of justice. Literally thousands of criminal defendants, heretofore chargeable with only one offense, would suddenly find themselves answerable for a second, with no concomitant benefit accruing to society for whose protection the criminal statutes replete with their penalties exist. Without regard to the nature of their crimes, defendants would incur liability for breaking and entering

whenever they stepped onto premises-whether stores, offices or even their own friends' and relatives' homes-with the intention of committing a felony. Though we certainly do not wish to reward criminals for exploiting the innocently extended invitations of merchants, shopkeepers and gracious hosts, neither do we care to penalize criminals indiscriminately for acts for which the General Assembly clearly intended no punishment.

The treatment that would be accorded a shoplifter, if appellant's construction of R.C. 2911.13(B) were to become the law, best exemplifies the potential oppressiveness of such an interpretation of the breaking and entering statute. Traditionally, theft and larceny statutes have been relied on to prosecute shoplifters. Under the regime which appellant envisions, however, a shoplifter would also be liable for breaking and entering, his felonious purpose-shoplifting-having vitiated his privilege to enter the store, a privilege enjoyed by the general public. The General Assembly clearly did not intend such a radical and unwarranted extension of the breaking and entering statute.

2 Ohio St.3d at 128, 443 N.E.2d 501. The Supreme Court concurred with the reasoning expressed by the courts in Florida, Wisconsin and North Carolina which have addressed the question posed in *Barksdale* concerning the proper application of breaking and entering statutes. The Ohio Supreme Court concluded,

R.C. 2911.13 was designed to punish unauthorized entry with felonious intent upon another's property where the entry itself was significantly egregious. The statute was not meant to function so as to

enhance every criminal violation occurring on property not owned by the defendant. Such a construction does no more than trivialize the offense of breaking and entering, and cannot be embraced.

Moreover, we are strengthened in the views we express today by the strictures of R.C. 2901.04(A), which mandates that: "Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." To interpret the breaking and entering statute in a way that imposes greater liabilities upon criminal defendants than the General Assembly intended comports with neither the words nor the spirit of R.C. 2901.04(A). *See State v. Carroll* (1980), 62 Ohio St.2d 313, 405 N.E.2d 305 [16 O.O.3d 359]

2 Ohio St.3d at 129, 443 N.E.2d 501.

{¶60} I find the same reasoning would apply to the instant case. Beatty's entrance into the store open to the public would normally be insufficient to prove the element of "trespass" necessary to sustain a conviction for aggravated burglary. The fact that he either committed a theft offense or assaulted the police officer while in the store cannot enhance those crimes into an aggravated burglary under the reasoning adopted by the Ohio Supreme Court in Barksdale. However, a review of the record in the case at bar reveals a letter to Beatty from his attorney dated March 20, 2019 that states, in relevant part,

Please find enclosed a notice from Walmart informing you that you were placed on the no trespass list on July 14, 2018. The Prosecutor provided this as part of discovery.

**{¶61}** Accordingly, it would appear that Beatty was a trespasser when he entered the Walmart on January 16, 2019. Because he was a trespasser by virtue of having been placed upon Walmart's no trespassing list, he could be convicted of aggravated burglary. Therefore, I concur in the majority's disposition of Beatty's First, Second Third, and Fifth Assignments of Error.

**{¶62}** I respectfully dissent from the majority's opinion concerning ripeness and Appellant's Fourth and Sixth Assignments of Error for the reasons set forth in my dissenting opinion in *State v. Wolfe,* 5th Dist., Licking No. 2020 CA 00021, 2020-Ohio-5501.

**{¶63}** I further note that the Ohio Supreme Court has accepted a certified conflict on the issue of whether the constitutionally of the Reagan Tokes Act is ripe for review on direct appeal or only after the defendant has served the minimum term and been subject to extension by application of the Act. *See, State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2020-Ohio-4702, *order to certify conflict allowed, State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150(Table); *State v. Downard,* 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, *appeal accepted on Appellant's Proposition of Law No. II, State v. Downard*, 160 Ohio St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1507 (Table)(Sua sponte, cause held for the decision in 2020-1266, *State v. Maddox*).

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee             :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
JOHN BEATTY                            :
                                       :
    Defendant-Appellant            :          Case No. CT2020-0015


For the reasons stated in our accompanying Opinion, the judgment of the Muskingum County Court of Common Pleas, is affirmed.  Costs assessed to Appellant.