[Cite as *State v. Tingler*, 2019-Ohio-816.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                                   Court of Appeals No. OT-17-032

     Appellee                                              Trial Court No. 14 CR 044

v.

Charles Tingler                                           **DECISION AND JUDGMENT**

     Appellant                                             Decided:  March 8, 2019

* * * * *

Gwen Howe-Gebers, Special Prosecutor, for appellee.

David J. Borell, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a delayed appeal[1] from a judgment of the Ottawa County Court of

Common Pleas which sentenced appellant to a four-year prison term sanction after

---

[1] *State v. Tingler*, 6th Dist. Ottawa No. OT-17-032 (Dec. 21, 2017).

revoking his community control sanction for violations. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant set forth three assignments of error:

I. The trial court erred in failing to appoint counsel at a community control revocation hearing that was listed on the "court-appointed" counsel list maintained by the court.

II. The trial court abused its discretion in revoking Appellant's community control as the manifest weight of the evidence presented at the hearing does not support that a community control violation occurred.

III. The trial court erred in relying primarily on evidence presented by the State regarding permissible, official actions taken by Appellant that, notwithstanding his status, were and remain, his right to take.

## 1. Background

{¶ 3} The following facts are relevant to this appeal.

{¶ 4} Stemming from making either gun or bomb threats to schools in April 2014, a jury convicted appellant on March 18, 2015, of two counts of inducing panic, violations of R.C. 2917.31(A)(1), second-degree felonies, one count of disrupting public services, a violation of R.C. 2909.04(A)(3), a fourth-degree felony, and one count of aggravated menacing, a violation of R.C. 2903.21(A), a first-degree misdemeanor. Thereafter, the trial court sentenced appellant to concurrent sentences for a total of four years in prison. Appellant was represented by a series of appointed counsel throughout the trial and

2.

sentencing process. Following sentencing, the trial court further appointed counsel for purposes of appeal. This court affirmed appellant's convictions and remanded for a resentencing hearing on the amount of restitution and jail-time credit for his pretrial period of incarceration. *State v. Tingler*, 6th Dist. Ottawa No. OT-15-015, 2016-Ohio-3376. The resentencing hearing was held August 4, 2016, and the trial court's judgment entry was journalized on October 31, 2016.

{¶ 5} Meanwhile, appellant sought from the trial court judicial release. In a nunc pro tunc judgment entry journalized on November 10, 2016, the trial court granted appellant judicial release and imposed three years of community control with 28 residential and non-residential sanctions. By April 10, 2017, appellant was charged with violating three of his community control sanctions.

{¶ 6} On April 12, 2017, the trial court notified appellant the hearing on his community control violation was set for May 5, 2017. On April 20, 2017, appellant filed a pro se motion requesting appointment of counsel "outside of Ottawa County." An indigency hearing was held that day, and the trial court later entered a judgment finding appellant indigent and appointed counsel for defendant from the Ohio Public Defender's Office. Then on April 26 and on May 3, 2017, appellant filed identical pro se pleadings in which he knowingly, intelligently and voluntarily waived his right to appointed counsel.

{¶ 7} The May 5, 2017 hearing was held, but the hearing did not reach the merits of the community control violation because appellee requested a mental health evaluation

3.

of appellant, and the community control violation hearing was rescheduled for June 30, 2017.

{¶ 8} Meanwhile, appellant filed a pro se motion on May 17, 2017 withdrawing his May 3, 2017 "Waiver of Counsel" and requested, again, the appointment of counsel for the community control violation hearing, but this time stated he "strongly objects to the appointment of the Ohio Public Defender." The trial court held a hearing on appellant's motion on May 19, 2017. The transcript of that hearing is not in the record before us, but the trial court's judgment entered May 31, 2017 stated the following:

This cause comes before this Court upon a Motion for Appointment of Counsel filed by Defendant. Previously, Attorney Steve Herron of the Ohio Public Defendant [sic] was appointed to represent Defendant. The matter came for hearing on May 19, 2017. Defendant advised that if the Ohio Public Defender was the only option left to him for appointed counsel, he wished to proceed pro se. Upon due consideration, it is hereby ORDERED, ADJUDGED and DECREED that Attorney Steve Herron shall continue to be appointed on this case and shall act in an advisory capacity only pending further order of this Court. (Emphasis sic.)

{¶ 9} Appellant followed up his May 17, 2017 motion with another "Motion for Appointment of Counsel" filed on May 25, 2017, this time stating, "If the Court's only option is to appoint counsel from the Ohio Public Defender, then Defendant hereby

4.

knowingly, intelligently, and voluntarily waives his right to counsel and will proceed pro se."

{¶ 10} Meanwhile, appellant's mental health competency was evaluated on May 19, 2017, at the Northwest Ohio Psychiatric Hospital, and on June 12, 2017 the hospital determined in its written report that "Mr. Tingler is competent at this time. He does display the capacity to work meaningfully with his attorney in his defense. It is further the opinion of the evaluator that Mr. Tingler is capable of understanding the nature and objectives of the proceedings being brought against him at this time."

{¶ 11} Appellant's community control violation hearing was held June 30, 2017. The record contains the transcript of the hearing. Appellant proceeded pro se, and Attorney Herron was standby counsel. There is no indication in the transcript appellant spoke with or consulted his standby counsel. Appellee presented evidence and testimony by the chief probation officer for the Ottawa County Common Pleas Court, Adult Probation Department. The witness was the probation officer who supervised appellant during his community control sanction. Appellant chose to not cross-examine the witness, raised no objections to the evidence submitted, and presented no testimony or evidence for the defense. After considering the evidence and statements presented, the trial court found appellant guilty of violating the terms and conditions of his community control sanction. Thereafter, the trial court determined appellant was no longer amenable to a community control sanction, revoked appellant's community control sanction, and re-imposed the remainder of his four-year prison term.

5.

## 2. Selecting Appointed Counsel

{¶ 12} In support of his first assignment of error, appellant argued the trial court violated his Sixth Amendment right to counsel at his community control revocation hearing by failing to appoint counsel from the "court-appointed" counsel list. Appellant argued that because the trial court found him indigent, he was entitled to be represented by an attorney from the approved appointment list, not the Ohio Public Defender's Office ("OPD"). Appellant argued he made multiple requests for the court to substitute his OPD standby attorney for someone from the court-appointed list or from a general announcement to attorneys outside Ottawa County. Appellant argued Crim.R. 44 did not govern in the situation where appellant rejected the appointed counsel provided but still requested appointed counsel. Appellant cited to *State v. Edsall*, 113 Ohio App.3d 337, 339, 680 N.E.2d 1256 (1996), to support his claim he was entitled to the appointment of substitute counsel upon a showing of "good cause." Appellant essentially argued the "irregularities" stated in his motions showed "good cause."

{¶ 13} In response, appellee argued the trial court did not abuse its discretion. Appellee argued appellant's Sixth Amendment rights were protected when appellant insisted on representing himself, and the trial court appointed standby counsel to assist appellant upon request. Appellee argued indigent defendants without the means to hire their own attorneys have the right to appointed counsel and competent, effective legal representation, but not to the appointed counsel of appellant's choice. During appellant's community control revocation hearing, the trial court told appellant it had inquired from a

6.

number of attorneys on the court-appointed list about representing appellant, and they refused because of appellant's "proclivity for filing grievances against everyone who represented you." The trial court did not abuse its discretion when it then told appellant the OPD was the only remaining option for appointed counsel.

{¶ 14} We review the trial court's selection of appointed of counsel to represent an indigent criminal defendant for an abuse of discretion. *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204, 205 (1965). Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 15} "In general, an indigent defendant does not have a constitutional right to choose the attorney who will represent him or her at state expense." (Citations omitted.) *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 64. Such indigent defendants "have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." (Citation omitted.) *Id.* An indigent defendant is entitled to competent, effective representation, which does not guarantee a rapport or meaningful relationship with appointed counsel. *State v. Nickelson*, 6th Dist. Wood No. WD-06-023, 2007-Ohio-6367, ¶ 41; *State v. Henness*, 79 Ohio St.3d 53, 65, 679 N.E.2d 686 (1997). "Hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel." *Nickelson* at ¶ 42. Also

7.

insufficient to justify a change in appointed counsel are appointed counsel's trial tactics or approach which vary from what appellant views as prudent. *Id.* Appellant had the burden to show "good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." *Id.*, quoting *Edsall* at 339. Appellant's burden included showing "a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *Henness* at 65, quoting *State v. Coleman*, 37 Ohio St.3d 286, 287, 525 N.E.2d 792 (1988), paragraph four of the syllabus. "The term of art 'actual conflict' refers not to a personality conflict but to a conflict of interest." *Id.*, citing *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 16} The record shows that throughout the course of the community control violation process, appellant alternated between requesting, with conditions, court-appointed counsel due to his indigency and then withdrawing his request when his conditions were not met. Appellant initially requested the trial court determine him indigent and appoint counsel "outside of Ottawa County due to previous irregularities Defendant has had with counsel in this case" without further explanation. The record does not contain the transcript of the hearing if appellant submitted evidentiary support showing those "irregularities." Nevertheless, the trial court found appellant indigent and appointed OPD counsel for him.

{¶ 17} Then appellant filed two identical filings in which he stated "it is his intention to knowingly, intelligently, and voluntarily waive his Sixth Amendment right to

8.

counsel under the United States Constitution. Defendant further submits that he reserves the right to withdraw this waiver at any time." Appellant did not withdraw his indigency affidavit nor dispute the trial court's indigency determination. Thereafter, appellant appeared pro se at a hearing held on May 5, 2017.

{¶ 18} Appellant followed up that hearing with a motion withdrawing and revoking his prior written waiver of appointed counsel. In that motion appellant repeated his condition for appointed counsel from "outside of Ottawa County due to previous irregularities Defendant has had with counsel in this case." He then made the additional condition that he "strongly objects to the appointment of the Ohio Public Defender, due to a previous irregularity Defendant has had with said office in this case." Once again, appellant's motion provided no further explanation or evidence of the "irregularities," and the record does not contain the transcript of the May 19, 2017 hearing. The trial court's subsequent journalized entry stated, "Defendant advised that if the Ohio Public Defender was the only option left to him for appointed counsel, he wished to proceed pro se." Thereafter, the trial court ordered, "Attorney Steve Herron shall continue to be appointed on this case and shall act in an advisory capacity only pending further order of this Court."

{¶ 19} Appellant reaffirmed his decision to proceed pro se with a May 25, 2017 motion reasserting his conditional request for appointed counsel stating, "If the court's only option is to appoint counsel from the Ohio Public Defender, then Defendant hereby

9.

knowingly, intelligently and voluntarily waives his right to counsel and will proceed pro se."

{¶ 20} The next court event was the June 30, 2017 community control violation hearing, of which a transcript is contained in the record. Appellant represented himself, and OPD Attorney Herron was present "to represent Mr. Tingler, should he decide that he wishes to have representation. He has informed the Court several times that he does not want the representation of Mr. Herron. However, he stands by." The trial court further clarified on the record the roles of appellant and his appointed standby counsel at the hearing:

> Court: So Mr. Tingler, if you decide during the course of the hearing that you want representation, Mr. Herron will take over at that point. You would not be co-counsel with Mr. Herron. It is either you or him representing you in this matter. Do you understand?
>
> Mr. Tingler: Yes, I do.

{¶ 21} At the hearing appellant's direct supervisor during community control testified appellant's mental health deteriorated to the point that his path to independence and reentry to society through supervision became unreasonable. The witness provided a number of examples of violations of community control sanctions. Appellant failed to keep his mental health doctor appointment even though free transportation was provided. When the appointment was to be rescheduled, appellant made onerous transportation demands as if it were his personal taxi service. Appellant increasingly made

unreasonable demands from service providers, lacked respect when making his demands, and failed to hold onto employment after 2-3 days so that he could eventually become independent. Appellant made frivolous complaints with Ohio Supreme Court counsel and Disciplinary Committee offices. Appellant became very difficult to supervise because of these behaviors avoiding what he was truly supposed to be doing for reentry: focusing on himself to get his mental health issues under control.

{¶ 22} Instead of cross-examining the witness, appellant requested extra time to subpoena witnesses "because I don't think that I can adequately prepare a defense to this [April 10, 2017] complaint without having witnesses." The trial court responded, "Well, this matter has been set for trial for some time. You decided to represent yourself in this matter. You have had adequate time to subpoena witnesses. We are here at trial. Trial has begun. Your motion is denied."

{¶ 23} For his closing statement after appellee's exhibits were admitted without appellant objecting, appellant had the following exchange with the trial court.

> Court: Mr. Tingler, anything you would like to say?
>
> Mr. Tingler: Your Honor, I want the record to reflect I don't believe I have received due process under the law. I don't believe that I have had adequate time to prepare a defense. I don't think I have had adequate remedies to prepare a defense and I object to everything that was stated today by the State.

11.

Court: I neglected to specifically ask if you had any cross examination of Ms. Flood, do you?

Mr. Tingler: At this time I can't.

Court: I would allow that. I would allow that.

Mr. Tingler: Well, Your Honor, if I recall, I believe I submitted a third motion for appointment of counsel and, to my knowledge, that motion has still not been ruled on, and it is because of that, I don't feel that I can prepare a defense to this complaint. You have appointed Mr. Herron on several occasions, once as counsel and now as advisory counsel. At a hearing on April 20th, the date I filed my original motion for appointment of counsel, there was a hearing held in which you found me indigent for purposes of counsel.

Now, the problem I have with the appointments of Mr. Herron is that the State of Ohio Public Defender is designated as counsel, and then it is the State of Ohio Public Defender that is to determine indigency, not the Court.

At a hearing on May 19th, you stated that no attorney on the court appointment list would agree to represent me and that the Ohio Public Defender was the only option available. Now Your Honor, for the record, I did check with counsel outside of Ottawa County and they noted that they have never been notified by the Court in regard to my representation.

12.

Court: Well, let me make the record clear. I said that I had inquired of several counsel on our court appointment list if they would be willing to represent you, and they said no, given your proclivity for filing grievances against everyone who represented you. It doesn't seem appropriate that I need to poll every attorney that we possibly have to see if they would take the case. It seemed that the Ohio Public Defender is good, competent, capable legal counsel. I went to them. They agreed to take the case.

Each time that you have asked for appointment of counsel, the answer has been the same, and it is today. You have counsel. In fact, he is sitting next to you if you wish to use him. The fact that you get to have counsel appointed to you doesn't mean you get counsel of your choosing necessarily. You get good, competent counsel to represent you. Mr. Herron is that. So if there is still a motion pending, that is obviously denied. And you wanted to say something else?

Mr. Tingler: But we still have the issue of indigency. You found me indigent.

Court: I did.

Mr. Tingler: It was your obligation to appoint counsel on the court appointed list. You didn't do that.

{¶ 24} As stated in the trial court's June 30, 2017 judgment entry, the trial court then found appellant guilty of violating the terms and conditions of his community

control sanction, determined appellant was no longer amenable to a community control sanction, revoked appellant's community control sanction, and reimposed his remaining four-year prison term.

{¶ 25} Neither party disputes appellant made a knowing, intelligent and voluntary written waiver in the record of his right to counsel. Crim.R. 44(C). Neither party disputes the trial court appointed an OPD attorney in a standby or advisory capacity while appellant proceeded to represent himself pro se. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 32. Thus, appellant was solely responsible for his self-representation, and the standby OPD did not share "hybrid" responsibility with appellant to prepare and conduct the defense at the community control violation hearing. *Id*. at ¶ 29-30. We find no support in the record of appellant's claim the OPD "is to determine indigency, not the Court."

{¶ 26} There is no indication in the record appellant's OPD standby counsel was incompetent or ineffective. Appellant failed to meet his burden of "good cause" to compel the trial court to appoint substitute counsel from the court's appointment list who is outside Ottawa County and not from the OPD, as there is nothing in the record regarding a conflict of interest with OPD Attorney Herron, a complete breakdown in attorney-client communication, or an irreconcilable conflict leading to an apparently unjust result. Appellant's use of the term "irregularities" in his motions with no further support in the record does not meet his burden. Appellant's insistence the trial court meet his conditions for appointed counsel due to his indigency also do not meet his burden.

14.

{¶ 27} We find the trial court's attitude was not unreasonable, arbitrary or unconscionable when it found appellant indigent and appointed OPD Attorney Herron as counsel, and then standby counsel, to represent appellant during the community control violation proceedings. We find no abuse of discretion when the trial court selected appellant's appointed counsel that was not of appellant's choosing.

{¶ 28} Appellant's first assignment of error is not well-taken.

### 3. Community Control Sanction Revocation Review

{¶ 29} We will address appellant's second and third assignments of error together as they collectively argue the trial court abused its discretion when it revoked his community control sanction. Appellant argued appellee's evidence was primarily for actions or events that were not violations of his community control sanctions. Appellant argued there were five examples of alleged violations that were not conditions of his community control.

{¶ 30} Appellant argued one example was appellant falling behind on his portion of subsidized rent for an apartment, even though the witness acknowledged he caught up, and there was no testimony that appellant was without housing or delinquent with his rent at the time of the hearing.

{¶ 31} Appellant argued a second example was appellant securing independence through transportation services, which the witness testified was terminated only because appellant took advantage of the free transportation too much. There was no evidence of appellant's record of transportation use at the time of the hearing.

15.

**{¶ 32}** Appellant argued a third example was the lack of evidence of appellant's employment efforts at the time of the hearing, even though the witness acknowledged working immediately was less important than getting himself reintegrated. There was no testimony that appellant's employment status was essential at the time of the hearing.

**{¶ 33}** Appellant argued a fourth example was the lack of evidence of appellant's willful or intentional efforts to avoid mental health counseling, where the witness acknowledged there was only one missed appointment in December 2016. Appellant cited to *State v. Bleasdale*, 69 Ohio App.3d 68, 590 N.E.2d 43 (11th Dist.1990), and argued the lack of evidence of him willfully and intentionally avoiding the conditions of his community control sanction meant the trial court abused its discretion when it found appellant had violated his community control sanction and revoked it.

**{¶ 34}** Appellant argued a fifth example was evidence of appellant's lawful actions that appellee's witness agreed were within his right to free speech. Appellant filed motions for special counsel and special investigations with the Ohio Supreme Court, filed grievances with the local bar association and grievance committees, and filed complaints with the Ohio Department of Rehabilitation and Corrections. Being annoying or difficult, appellant argued, was not cause for revocation of community control.

**{¶ 35}** In response, appellee argued the trial court did not abuse its discretion. Appellee argued the witness testified appellant did not complete his mental health treatment, had quit his employment after only 2-3 days, was difficult to supervise and unable to follow the rules of community control, including being a "model citizen."

16.

Great deference should be given to the trial court's determination of the credibility of the witness and evidence presented. The trial court did not act unreasonably, arbitrarily or unconscionably when it heard all the testimony, reviewed all exhibits admitted into evidence, and rendered its decision to revoke appellant's community control sanction.

{¶ 36} We review a trial court's decision to revoke a community control sanction for an abuse of discretion. *State v. Clark*, 6th Dist. Wood No. WD-12-073, 2013-Ohio-4831, ¶ 15. We will not reverse the trial court's decision to revoke an offender's community control sanction if the record contains substantial evidence of the violation, consisting of more than a mere scintilla of evidence but less than a preponderance of evidence. *Id.*

{¶ 37} The record contains the 28 general and specific conditions to appellant's community control sanction. The record also includes the complaint filed alleging three community control violations by appellant, although any violation would suffice, for the relief sought of revoking his community control sanction. Revocation of a community control sanction was within the broad discretion of the trial court and punished the failure to comply with the terms and conditions of the community control sanction, not the specific conduct for appellant's underlying crimes. *See In re B.H.*, 6th Dist. Erie No. E-14-096, 2015-Ohio-2296, ¶ 24.

{¶ 38} The first alleged community control violation was that appellant "was untruthful with the Probation Department regarding transportation to an April 7, 2017 probation appointment." The evidence in the record contained one general community

control condition relevant to this alleged violation: "You shall promptly and truthfully answer all inquiries directed by the court or Ottawa County Adult Probation Department." We reviewed the record and do not find it contains any evidence to support this alleged community control violation on April 7, 2017.

{¶ 39} The second alleged community control violation was, "On December 17, 2016, Defendant failed to keep a scheduled appointment with Dr. Jama, at Bayshore Counseling and Recovery Services." The evidence in the record contained three community control special conditions relevant to this alleged violation: (1) "Defendant shall follow the advice and directions of, and be subject to the supervision of the Probation Department of this Court"; (2) "Defendant shall complete any and all assessments and treatment as directed by the Probation Department"; and (3) "Defendant shall have a mental health assessment completed and follow all treatment recommendations of the mental health counselor." In addition, the witness testified at the hearing:

> An appointment had been set up with him on the 17th of December, and it is my understanding from Bayshore he called and canceled that appointment and said he had family issues, and then when he was approached about rescheduling it, he basically indicated that he didn't want to do that. It eventually occurred that there was another appointment that was scheduled in February, but it wasn't until I inquired why is it [sic]

18.

taking so long for this appointment that I learned there was an appointment in December that he had canceled.

{¶ 40} We do not agree with appellant that his failure to comply with his mental health services requirement was because "the actions of third-parties" withdrawing his transportation services. Appellant argued he "cannot be held accountable for a failure which is not his own making, and which is ultimately neither willful nor intentional." We disagree that appellee was required to show appellant willfully and intentionally violated his community control sanction, although there is evidence in the record to suggest appellant intentionally hid the truth of his cancelation of a December 2016 mental health appointment. As this court previously stated, where appellant was provided with the correct type of treatment to resolve an issue, it "was up to appellant to use the treatment to make the necessary changes in his life. Regrettably, as testified to by his counselors, appellant was unable to make those changes." *Clark*, 6th Dist. Wood No. WD-12-073, 2013-Ohio-4831, at ¶ 20.

{¶ 41} Here, appellant received both mental health counseling and case management services through Bayshore Counseling Services. "It was explained to Charles that, you know, the purpose of case management services were to assist him with his reentry into the community." Included in the services provided by Bayshore to appellant "were transportation, assistance with seeking employment, and that type of thing."

19.

Q: As for transportation for his appointments with Bayshore and Doctor Jama, how did that go?

A: Well, the case management grant provided transportation to him. Primarily, as I said, the goal was for him to get reintegrated into the community. * * * [T]hey also provided assistance as far as applying for Medicaid, and transportation for these places that he needed to go to get linked to various services.

Q: At some point during that time, did the transportation issue fall apart?

A: Yes. I had received numerous reports from Bayshore that Charles was becoming more and more demanding about, "Take me here, take me here," those sorts of things. * * * On at least two occasions, I explained to him that, you know, this whole transportation thing was to assist him in reentry into the community, it was not a taxi service. The goal was that he become more independent and self-sufficient. * * * [T]he feeling was that Mr. Tingler was taking advantage of [the transportation service] and instead of becoming more independent, he was becoming more dependent and more demanding.

{¶ 42} We reviewed the record and find it contains substantial evidence to support the alleged community control violation on December 17, 2016.

{¶ 43} The third alleged community control violation was, "Defendant has failed to be of general good behavior in that he has repeatedly harassed public officials, officers of the court, law enforcement, and public and private agencies with reports, complaints and grievances. Additionally, Defendant has failed to be in compliance with the Citizen Circle Program he enrolled in."

{¶ 44} The evidence in the record contains one community control general condition relevant to this alleged violation: "You shall abide by the laws of the United States, the State of Ohio, the Political Subdivisions of Ohio, and be of general good behavior." In addition, the witness testified why appellant's behavior was an issue to supervising him.

A: It became an issue. I was aware, and this actually commenced the end of December, into January, that Charles was calling the Police Department, the Sheriff's Office making reports, complaints. This progressed to filing motions for special counsel and investigations and grievances with the Supreme Court. There were complaints with the Department of Rehabilitation and Corrections, the Bar Association, Grievance Committee of specific bar associations. * * * He was feeling obsessive about things and we actually had a conversation about all the phone calls to the various law enforcement agencies and this type of thing, and discussed the fact that because of his underlying charges, this didn't reflect well on him because these were all about matters that were not new.

21.

At one point the Supreme Court counsel and the Disciplinary Committee's Office indicated that it was her impression that * * * he was just randomly looking through newspaper articles and reacting to those and writing letters, filing complaints, making grievances based on things that had already been investigated or had already been disposed of and he just wasn't happy with the result.

Q: Based upon all of that activity, did it become difficult for you, as his supervisor, to supervise him on probation?

A: It did. It got to the point where, as I said, it started the end of December and first part of the [sic] January that I started becoming aware of it on a regular basis. By the end of March, that first week of April, it was to the point where, you know, this is out of control.

{¶ 45} We reviewed the record and do not find it contains any evidence to support this alleged community control violation regarding his enrollment in the Citizen Circle Program. However, we find the record contains substantial evidence to support this alleged community control violation regarding his failure to be of general good behavior.

{¶ 46} We find the record contains substantial evidence of at least one violation of appellant's community control sanction. We find the trial court's attitude was not unreasonable, arbitrary or unconscionable when it revoked appellant's community control sanction. We find no abuse of discretion.

{¶ 47} Appellant's second and third assignments of error are not well-taken.

22.

## 4. Conclusion

**{¶ 48}** On consideration whereof, we find that substantial justice has been done in this matter and the sentencing judgment of the trial court to be lawful. The judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.        
_____
JUDGE

Thomas J. Osowik, J.        
_____
JUDGE

Christine E. Mayle, P.J.       
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.